## City of Corbin v. Davis.

(Decided January 13, 1922.)

### Appeal from Whitley Circuit Court.

1. Prisoners—Compensation for Services—Jailers—Fees.—Section 1730 of the statutes fixing the fees of the county jailer for dieting prisoners does not apply to or govern the fees for similar services performed by the keeper of the station house, work house, jail or similar institution in cities, and the chief of police of the city of Corbin, a city of the fourth class, whose duties in part were to diet and care for those convicted in the city court, is not entitled to the fee of seventy-five (75) cents per day as provided for county jailers in the section referred to; he is only entitled to recover the fees fixed by ordinance of the city and in the absence of such ordinance he can recover no more than the amount allowed and paid to him by the city council.

2. Municipal Corporations—May Contract by Record of Council.— The only way a city in this Commonwealth may contract is by record of its city council, but if the matter involved is one about which it is legally authorized to contract and a transaction has been fully executed by it without the formalities of a legal contract it will be bound thereby in the absence of fraud or other vitiating facts.

3. Prisoners—Compensation for Services.—A city has no right to agree to pay or in fact to pay for the care and dieting of prisoners charged with felonies, since it derives no benefit therefrom and such prisoners should be transferred and delivered to the jailer of the county whose duty it is to care for them; therefore, although the city had paid to the keeper of its city jail the fees for dieting

felons it may recover from him the amount so paid upon the ground that the payment was void and could not be legally ratified.

STEPHENS & STEELY and M. A. GRAY for appellant.

R. L. POPE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, George L. Davis, served the appellant and defendant below, City of Corbin, a city of the fourth class, as chief of police from about the beginning of the year 1914 till the middle of the year 1918. He received a salary, presumably fixed by the city council, though there is no record evidence of it, of $40.00 per month for a part of the time, and then $50.00 per month, and toward the close of his services he received $60.00 per month. Corbin is not a county seat and, hence has no county jail within its limits. It appears that the city had provided a city station house, workhouse or jail within which to keep prisoners ordered to be confined for violations of city ordinances, or who had committed misdemeanors within the city and the fines from which went into the city treasury, and it is also alleged in the petition that it was made the duty of plaintiff, as chief of police, to diet such prisoners when confined in the city jail, and that he performed that duty throughout his service.

After plaintiff ceased to serve the city, by resigning his office, he brought this action against it alleging the above facts and that throughout the time he acted as chief of police he was entitled to receive seventy-five (75) cents per day for each prisoner whom he kept and dieted in the city jail, and that he had not been paid but fifty (50) cents per day for such services, the difference between which amounted to $532.05, for which he prayed judgment.

The answer was a denial of plaintiff's right to recover any of the sum for which he sued, and it contained a counterclaim seeking to recover against him the sum of $175.50, the amount overpaid him by defendant through mistake, and which included fees paid to him for dieting prisoners whom he had no legal right to detain in the city jail, among which were a number charged with felonies, and some the prosecution of whom the city as such had nothing to do. Other items in the counterclaim were for imprisoning persons without legal justification. Upon

a trial the court allowed the entire claim of plaintiff, and $58.00 of the counterclaim of defendant, and gave judgment against it for $474.05. Complaining of that judgment defendant prosecutes this appeal, but there is no cross-appeal by plaintiff from the judgment on the counterclaim in favor of defendant.

There is nothing in charters of cities of the fourth class, either expressly or by necessary implication, fixing the amount of the fees involved, and, necessarily, it should be done by an ordinance duly enacted. The city clerk testified that he found no such ordinance as far back as 1902 and that the ordinances of the city prior to that time were, from some cause, non-accessible. Plaintiff testified, as did also witnesses for defendant, that his predecessor received for the services involved the sum of fifty (50) cents per day for each prisoner, and that no greater sum had been paid according to the proceedings of the council as far back as 1902, and in such case we might well presume that an ordinance prior to that time had been passed fixing the charges at fifty (50) cents per day; but, whether so or not, it is quite clear that if it was within the power, and therefore the duty, of the city to designate by ordinance the amount of such charges, the rendering of an account for them by plaintiff from month to month, or from time to time, and the payment of them and the acceptance thereof by him (as was done) would estop each party from questioning their correctness, although no ordinance had been passed fixing the amount. Such conduct of the parties would create an *executed* implied contract by their acquiescence, which, though entered into through the wrong method by the city (since is must contract by its records), became binding on both parties after its *execution*. If the fees claimed were fixed before plaintiff's induction into office, an agreement beforehand, or perhaps after the fees were earned, to accept a less sum would not be binding on plaintiff if the position he held was an office within the meaning and contemplation of sections 161 and 235 of the Constitution, since the agreement in that case would, not only be without consideration, but would also be against public policy and void. Cases recognizing the principle stated are, City of Lexington v. Renick, 105 Ky. 770; Second National Bank of Ashland v. Ferguson, 114 Ky. 516, and City of Lexington v. Gentry, 116 Ky. 528. On the contrary, if compensation for the services claimed

was not fixed, either by ordinance or by statute, before induction into office, the payment to and acceptance by the officer of the amount demanded will, as we have seen, operate to extinguish his claim for the services performed. This much seems to be conceded by counsel for plaintiff, but he insists, and the court so held, that section 1730 of the Kentucky Statutes, relating to fees of jailers of the county, as amended by act of 1910, applies to keepers of city jails and governs the amount of the fees of plaintiff for such services which neither he nor the city could bindingly abrogate under the rule above stated. The section referred to, in so far as applicable, says:

"For keeping and dieting prisoners in jail, when confined for an offense other than a felony or contempt of court, 75 cents per day to be paid out of the county levy, unless confined for a breach of the bylaws or ordinances of a city or town, or for the violation of a statute, where the city or town gets the benefit of the fine; in that case to be paid by such city or town. For imprisoning and releasing a prisoner charged with a misdemeanor, sixty cents, to be paid out of the county levy, unless confined for a breach of the bylaws or ordinances of a city or town, or for a violation of a statute, where the city or town gets the benefit of the fine; in that case, to be paid by such city or town. And for imprisoning and releasing a prisoner charged with a felony, sixty cents, to be paid out of the state treasury. For all other services performed by him the same fees as sheriffs."

In an effort to fit the terms of the statute to the office of chief of police for cities of the fourth class (when they perform the duties of city jailer) so as to entitle them to the same dieting fees that are allowed to county jailers, resort is had to section 3506 of the statutes, which is a part of the charter of cities of the fourth class and pertains to the duties of chief of police therein. The applicable portion of it is: "It shall be his (chief of police) duty to execute all processes, orders and judgments of said court (city court) that may be directed to him, and he shall be entitled to the same fees for like services, and to the same remedies for collecting his fees that a sheriff is entitled." Clearly, that language refers to fees for executing processes, orders and judgments of the city court which could be required of the sheriff of the county, or to similar services which are required of that officer for the execution of processes, orders and judgments

issued by the county, quarterly or circuit courts of the county; and it has no relation whatever to fees or charges to which the chief of police may be entitled as the keeper of the city prison. There is nothing in section 1730 remotely indicating that this provision shall apply to the keeper of city prisons, either in cities of the fourth class or any other class; and to so interpret and apply the section would be an assumption by the court of the right of amendment and therefore a direct encroachment upon the legislative department of the Commonwealth. The courts have no such authority and we think the learned judge who tried the case was in error in assuming that the section under consideration, expressly applicable to jailers only, was also applicable to the keepers of city prisons.

But the question is asked if that section does not apply, how are such fees to be determined? The answer is, by an ordinance of the city, which we have presumed existed in this case; but in its absence the parties, by their conduct in demanding and accepting payment, may adjust their rights.

As we have seen, the city, by making payment, although in an informal manner, could estop itself from repudiating the payment, if it had the right to do so by adopting the method required for making binding municipal contracts. City of Princeton v. Princeton Electric Light Co., 166 Ky. 730. It had no right to appropriate the funds of the city in defraying the expense of imprisoning those charged with felonies, and the court properly gave judgment in its favor against plaintiff for the item of $58.00.

Wherefore the judgment is reversed with directions to dismiss the petition and to render judgment in favor of the city against plaintiff for $58.00, and for further proceedings consistent herewith.