## Durrett Constructon Company v. Caldwell County.

(Decided October 20, 1922.)

### Appeal from Caldwell Circuit Court.

1. Counties—Action for Contract Price of Construction of Road—Counterclaim.—In a suit against a county by the contractor for the contract price of constructing a macadam road, the county filed a counterclaim for damages on account of defective construction. Upon proof heard the claim was denied. Evidence considered and held to warrant the dismissal of the claim.

2. Counties—Contract for Road Construction—Presumptions.—It will be presumed that the fiscal court of a county, in letting a contract for the construction of a macadam road, acted within its authority, and the defense that it exceeded its authority under section 157 of the Constitution cannot be established by merely showing what the county received and expended during the year in which the contract was let, but the county must also show the state of its finances at the date when the contract was made; and to meet that requirement it must show what indebtedness it had incurred prior to the making of the contract, the total of its fixed constitutional and statutory expenses for the balance of the year, what revenue it could collect under the highest tax rate allowed by law and under the final assessment of all assessable property in the county, together with any other revenues that the county would receive during the year, including the cash that it then had on hand.

3. Counties—Road Construction—Pleading—Setting Aside Judgment.—Where there is a controversy as to the number of cubic yards of rock used by the contractor in constructing a macadam road, and the county, in its first amended answer, admits the use of the number of yards claimed by the contractor, but in a second amended answer puts in issue the amount of rock used on the road, and both parties introduce evidence on that subject, treating the question as one at issue throughout the trial, the question of fact is one to be determined by the court, and where the acceptance of the county's evidence on that issue forms a rational basis

for the judgment rendered, this court will not set the judgment aside.

4. Counties—Construction of Roads—Estimates—Evidence.—Where a controversy exists between the county and the contractor as to the number of cubic yards of dirt excavations made in the construction of a macadam road, and the dirt yardage claimed by the contractor was included in its first two estimates approved by the county road engineer and the state inspector and paid by the county, the presumption is that the quantity of dirt excavation included in the estimates is correct, and the burden is on the county to disprove it. However, upon the refusal of the county to pay the final estimate, and in a contest over the contract, in which an issue is made as to the quantity of dirt removed, the prima facie case made out by the approval and payment of the estimates may be overcome; and it is held in this case that the evidence on that issue is such as warranted the trial court in holding that the estimates were incorrect and the excavations made did not exceed the yardage claimed by the county on the trial.

5. Appeal and Error—Evidence.—Where there are no separate findings of law and fact by the trial court, but there is ample evidence in the record to sustain the judgment on two issues of fact therein presented, this court will not reverse the judgment.

PETER, LEE, TABB & KRIEGER, JOHN C. GATES and EMANUEL GATES for appellant.

J. ELLIOTT BAKER, R. W. LISANBY and ALVIN LISANBY for appellee.

Opinion of the Court by Judge Moorman—Affirming on original and cross appeals.

The opinion on the first appeal of this case is reported in 180 Ky. 594. It was there held that the trial court erred in sustaining a demurrer to the answer, counterclaim and cross petition as amended, and also in refusing to permit a second amended answer, counterclaim and cross petition, tendered on June 4, 1917, to be filed. On the return of the case to the circuit court, the issues were made conformable to the opinion of this court, the proof taken, and the case submitted. Judgment was rendered in favor of the Durrett Construction Company for $850.00, with interest thereon from June 1, 1916, at the rate of six per cent. per annum until paid. The Durrett Construction Company is prosecuting an appeal from that judgment, claiming that it is entitled to a judgment for $2,695.48, and Caldwell county, on cross appeal, is asking a reversal of the judgment against it, and for

judgment against the construction company on its counterclaim.

It is the claim of the construction company that it contracted with the county for the construction, according to specifications set out in the petition, of a macadam road on what is known as the Cadiz-Princeton pike, at an estimated cost of $6,250.00, one-half thereof to be paid by the state; and that it was stipulated in the agreement that the work should be suspended, and the contract considered performed, when sufficient work was done to consume the $6,250.00 appropriated on the contract. The construction company also claims that it has fully performed its contract, but has received therefor only $3,-336.59, whereas it is entitled to and there is still due it the additional sum of $2,837.45. By the answer and cross petition as amended the alleged completion of the contract was put in issue, and a counterclaim for damages on account of defects in the construction, aggregating $2,540.00, was asserted. As a further defense the county averred that the contract was made contrary to section 157 of the Constitution, in that the indebtedness thereby incurred was in excess of the county's revenue for the year 1915. On the claims of the parties, thus briefly recited, the issues were made, and judgment was rendered. It is evident, from the character of judgment entered, that the trial court disallowed the county's claim for defective construction, and also disallowed the defense asserted under section 157 of the Constitution. These questions we will briefly consider before proceeding to discuss the issues on which the court apparently based its decision.

With regard to the defectiveness of the construction, the evidence is somewhat conflicting. There was some evidence introduced by the county tending to show that the work did not comply with the specifications, and especially that the rock put on the road was not of the specified dimensions, and was not properly rolled. Two or three witnesses testified on the latter point to the effect that in the spring following the putting down of part of the macadam the road showed evidence of instability. On the other hand, the proof for appellant clearly indicates that the specifications were strictly followed, and, furthermore, it appears that the county road engineer and an inspector from the office of the State Highway Commissioner both observed the work as it progressed

and apparently were satisfied with it. Whatever capacity they may have possessed with reference to determining the yardage of dirt that was moved and the quantity of macadam placed, it cannot be denied that they had ample opportunity to examine appellant's work as it progressed, and, having some practical knowledge of road building, were manifestly competent to determine whether the construction conformed to specifications. It is our opinion, therefore, that the counterclaim for defective construction should have been denied.

Nor have we been able to observe any merit in the defense that the fiscal court, in letting the contract, exceeded its authority under section 157 of the Constitution. The determination of that question depends on the facts in evidence, for it is certainly true, that if the appropriation for the work, whatever amount was done, exceeded the expendable revenues of the county for the year, to that extent there can be no recovery on the contract. Nevertheless, it was obligatory on the county to establish its defense in this respect, as it will be presumed that the fiscal court acted within its authority in letting the contract. And it may be stated here that the defense cannot be established by merely showing what the county received and expended for the year, but the state of the county finances at the date when the contract was made must also be shown. To meet this requirement it was necessary for the county to show what indebtedness it had incurred prior to the making of the contract, and also the total of the county's fixed constitutional and statutory expenses for the balance of the year. Furthermore, in arriving at the income of the county for the year, it was necessary to prove what revenue would be collected under the highest tax rate allowed by law, and under the final assessment of all assessable property in the county, together with any other revenues that the county would receive during the year, including the cash that it then had on hand. City of Providence v. Providence Electric Light Co., 122 Ky. 237; Lawrence County v. Lawrence Fiscal Court, 130 Ky. 587; Mitchell v. Knox County Fiscal Court, 165 Ky. 543; and Carter, etc., v. Krueger & Son, etc., 175 Ky. 399. The exhibit filed by the county clerk, showing the amount of taxes collected and the expenditures made, is wholly insufficient to meet these requirements, and this is true, even if the alleged indebtedness of approximately $19,000.00, brought over

from preceding years, be considered in arriving at the fixed expenses for the year 1915. It is not shown in the statement of expenditures for that year when the appropriations for the expenditures were made, with reference to the date of the contract in question, and, therefore, the priority of right as between them and the indebtedness in dispute here is unascertainable. In view of these deficiencies in the proof, the presumption that the fiscal court acted within its constitutional authority is conclusive.

It appears from the record that on November 24, 1915, the construction company submitted to the fiscal court an estimate of the work then performed. This estimate was approved by the county engineer and the state road inspector. It amounted to $2,695.48. There was then issued to the construction company a warrant for $2,156.39 in full payment for the work, less twenty per cent. which the county had the right to retain under the contract. A similar statement, approved by the same officers, was submitted on December 29, 1915, amounting to $1,475.25, and thereupon there was issued to the construction company a warrant for $1,180.20 in full payment for the work, less the retained percentage. Thereafter the construction company did other work, and, conceiving that it had done sufficient work to consume the entire amount appropriated on the contract, it submitted a bill for $2,003.31. That bill, however, was not approved by the county engineer or the state inspector, both declining to approve it on the ground that it, with the previous estimates, represented a great deal more work than had actually been done. It it not amiss to say here, that the inspector for the state, who approved the two former accounts, had been displaced, and his successor, perhaps, as well as the county road engineer, declined to approve the final estimate, after conferring with W. F. Brooks, a representative of the Federal highway department. Both parties, for the purpose of establishing their respective claims in regard to the amount of work done, have treated the three accounts, in the taking of proof, as one, although it is contended by appellant, and rightfully so, that the approval of the first two estimates by the county road engineer and the state inspector, and the payment of them by the fiscal court, make out a *prima facie* case as to their correctness. The evidence does not disclose, otherwise than by

the third bill, what amount of work was done after December 29th, and, as we have observed, in attempting to establish their respective claims, the litigants, except as stated above, treat the three bills as one for the purpose of showing the amount of work performed under the contract.

The two items about which there is the most serious controversy are: The quantity of dirt removed, and the amount of macadam placed, there being a wide discrepancy in the contentions of the parties on these points. It is extremely difficult to form any satisfactory opinion as to how the estimates and calculations as to these quantities were made. The construction company claims that the first two estimates were made by Barnum Davis, the inspector for the state highway department; but the county road engineer testified that one of them, the second, was brought to him by Davis and R. T. Durrett, president of the construction company, and his approval of it was procured, on the assurance from Durrett that his engineer had verified the calculation, and that it was correct, and the further assurance that he, and also his company, were perfectly solvent and would be responsible for any overpayment, if there was one, on that account. The record is silent as to whether Barnum Davis was an engineer, or capable of computing the quantities of rock and dirt moved in the construction of the road; but it is shown that many of the inspectors sent out by the state highway department at that time were not engineers, and were incapable of making such computations.

As to the amount of rock used there is much speculation and little evidence of correct measurements or accurate computations. Durrett testified that he kept tab on the loads and figured the loads of rock and the yardage, yet he did not introduce any evidence as to the number of loads, and it is moreover shown by the preponderance of the evidence that the beds of the wagons in which the rock was hauled were not large enough to hold one and one-half cubic yards, although, according to the proof, the haulers were instructed to make beds that would hold that quantity. The construction company had a foreman and an assistant foreman on the work but neither of them kept a record of the amount of rock and dirt moved, and admittedly Durrett, who had other contracts, was on the work only occasionally. Computations of the rock yardage were made by some of the wit-

nesses for the county, using as a basis therefor the depth, width and length of the macadam on the finished road; and if the results thus obtained are dependable only about one-third of the yardage that appellant claims to have used was ever placed on the road.

It is further contended by the county, and that contention is borne out by the allegations of the petition, that the rock was to be paid for at $1.76 per cubic yard, rolled measure, whereas the estimates made by appellant were loose measure. This difference, it is said, would result in a reduction of the loose measure by one-third. That contention is not met by appellant further than to say there is nothing in the record to show whether the rock was measured by the wagon load or otherwise, and it must be presumed that it was correctly measured. But on that point we are confronted by Durrett's testimony, in which he stated that he arrived at the yardage that he claimed by keeping tab on the loads of rock, and figuring the number of loads of rock and the yardage. It would seem clear, therefore, that his figures as to the rock yardage were based on the number of loads, and it is not denied that there is a material difference in the measurements of rolled and loose rock.

Aside from the difference between the measurements of rolled and loose rock, there is to be considered the calculations arrived at in the manner hereinbefore indicated, tending to show that only about one-third of the yardage claimed by appellant was ever placed on the road. In connection with that evidence, however, appellant calls attention to the fact that in the amended answer and cross petition filed in April, 1917, the county stated, as an approximation of the work done to that date, that there had been completed 1,417.5 cubic yards of macadam surfacing, and it is argued on that basis that the county is bound by that statement, and should not now be permitted to question its accuracy. This is a maintainable position except for the fact, that the second amended answer put in issue, though awkwardly, the amount of rock placed on the road, and both parties introduced evidence on that subject, treating the question as one at issue. It seems to us, therefore, to follow that the question of fact was one to be determined by the trial court, and, similarly, is one for review on this appeal. There was no separation of the trial court's findings of law and facts and, consequently, we are uninformed as to

the grounds for its judgment, but a rational basis for it exists in the acceptance of the county's evidence on this issue, and we are not prepared to say that such a view of the effect of the evidence is incorrect.

What has been said with reference to the evidence pertaining to the quantity of rock used applies with even greater force to the dirt excavated, for whereas there was some evidence that the rock quantities were ascertained by keeping account of the number of loads of loose rock hauled, there is no evidence as to how the dirt excavations were ascertained. On this contested item there is a variance between the litigants of seven thousand cubic yards, which, at 26c a cubic yard, amounts approximately to $1,800.00, and that sum is practically the difference between the judgment and the amount claimed by the construction company. The dirt excavations were completed by December 29, 1915, and the county paid therefor on 12,625 cubic yards in the two estimates of November 24 and December 29, 1915. It is earnestly argued for appellant that the presumption is that those estimates were correct, and in that view of the law it was incumbent upon the county to show the contrary. This position is undoubtedly sound, for the estimates were approved by the county road engineer and the state inspector. We have, however, already called attention to the fact that the county engineer did not pretend to make any computation as to dirt removed, and, according to his testimony, objected to signing the second estimate, though he did sign it on the assurance of the company's willingness to assume responsibility for any inaccuracies. There is also proof that Barnum Davis, who was the inspector when this work was being performed, was not always on the job, and the record is silent as to how the quantities embraced in the first two estimates were arrived at, except that it is presumed that Davis made the computation as, according to Durrett, he furnished the estimates. Notwithstanding the intimations in the record that Davis was incompetent as well as careless, the presumption must be indulged that the estimates were correct, and the burden was on the county to disprove them. The county assumed that burden. One of its witnesses was W. C. Brooks, who is an experienced road engineer, and who made a calculation based on the original survey and a re-survey made under his direction. The point is made that all of his testimony is incompetent, since the basis of

his computation rests upon two surveys, the accuracy of neither of which is shown. It is shown, however, that the original survey was filed in the office of the state highway commission as a public record, and it must, therefore, be presumed to be correct. Brooks testified that he supervised the re-survey which was made by men under him, but it does not appear that he verified the measurements or that they were accurately made, and in view of that fact it is our conclusion that the calculation based on the re-survey was incompetent. But, independently of his calculation, Brooks testified that he went over the road and looked at the work done and could easily see that appellants moved no such quantity of dirt as it claimed to move. Another experienced road builder, S. L. Waggoner, testified that his estimate of the dirt moved did not exceed 5,600 cubic yards, and he gave facts as to the height, width and length of the fill made, on which his estimate was based, which facts, if true, and they constitute the most reliable evidence in the record, justify his conclusions. On the other hand, appellant introduced a witness who, using the original survey as a basis, made another, and by cross sections computed the quantity of dirt removed, arriving at an amount approximating that claimed by appellant. The adoption of the county's evidence on this point in controversy would result in the judgment rendered, the amount of which, when added to the disallowance on account of about seven thousand cubic yards of dirt, would amount to the sum claimed by appellant. If this was the basis of the judgment, the court must necessarily have considered the evidence for the county sufficient to overcome the *prima facie* case made out for the construction company by the payment of the estimates of November 24th and December 29th. And, in view of the proof as to the incompetency of the state inspector first assigned to the work, and the fact that the county road engineer kept no record of the quantity of dirt moved, and, when he testified, did not pretend to have verified the quantities stated in the two estimates, but did say that in his judgment all the dirt excavations did not exceed 5,000 cubic yards, we are unable to say that there is not ample evidence to justify the belief that the county's claim as to the dirt excavation is correct.

What effect was given by the trial court to the evidence on the two issues discussed we, of course, do not

know.  But it is our opinion that, on either issue, there is . sufficient reason for the judgment.  It is, therefore, affirmed on both appeals.