## Pulaski County, et al., v. Richardson, County Treasurer, et al.

(Decided June 22, 1928.)

(As Modified on Denial of Rehearing, October 19, 1928.)

### Appeal from Pulaski Circuit Court.

1. Counties.—Where the fiscal court had directed the county treasurer by order not to pay any claim without a specific order, notwithstanding which the treasurer paid a claim which was invalid, he could not resist recovery of its amount, when sued by the county, on the ground that he had no notice that the claim was invalid, since the order of the fiscal court was sufficient notice thereof.

2. Counties.—Persons contracting with a county have a right to presume the county is going to make every possible effort to comply

with its contract, and hence that county is going to levy all possible taxes and raise all available revenue.

3. Counties.—In determining limit of county's indebtedness under Constitution, sec. 157, amount that a poll tax would have yielded, even though such tax was not levied and amount was not raised, must be included as part of income and revenue for county.

4. Counties.—In action by county against treasurer and his surety to recover amount alleged to have been improperly paid by treasurer on claims against county because county's indebtedness exceeded limit prescribed by Constitution, sec. 157, held that, since all county warrants are prima facie valid, burden rested on treasurer to show that claims which county alleged were older and superior to the ones treasurer had paid were invalid, thus establishing validity of debts paid by treasurer, or to show that debts which treasurer paid were older and superior to such other claims.

5. Counties.—Where the county fiscal court allows a claim against the county, the court acts judicially, and cannot thereafter reconsider its action.

6. Counties.—Even though a county fiscal court has allowed a claim against the county and the county treasurer has paid it, if the claim was illegal, the county can recover it from the man who wrongfully got the money.

7. Counties.—Though county fiscal court, after allowing a valid claim, cannot reconsider its action after adjournment of term at which it was allowed, when it allows and issues a warrant to pay an invalid claim its action is absolutely void and of no binding effect on county.

8. Counties.—When a county treasurer is confronted by conflicting orders of fiscal court, he should obey the last one, for the presumption is that the court is proceeding within its jurisdiction, and is honestly endeavoring to discharge its duty and only doing what it has a right to do.

9. Counties.—Petition, in action by county against treasurer and surety on his bond, to recover sums alleged to have been paid by treasurer on claims against county after fiscal court had made an order that treasurer should not pay out such sums, held to state a cause of action, in that it has alleged facts showing that claims paid by treasurer were invalid.

G. W. SHADOUN, KENNEDY & JONES and DENTON & PERKINS for appellants.

WILLIAM WADDLE for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Pulaski county, suing by its proper authorities, sought to recover of J. M. Richardson, its treasurer, and J. H. Gibson, his surety, $29,215.16, which it claimed the treasurer had improperly paid out and failed to account for. It was unsuccessful, and has appealed.

As this case went off on a demurrer to the county's petition as amended, the correctness of that ruling is the only question before us.    The county offered to file five amendments to its petition, and was allowed to file all of them except its amendment No. 4, which it was properly not permitted to file, as that amendment was not germane to the issue.   In its petition and its amendments 1, 2, 3. and 5, which make up 52 pages of the record, there are many conclusions pleaded and much that is immaterial, but the county has in its petition as amended alleged sufficiently the following:

(a)    The official capacity of appellants to sue, in the name of the county.

(b)    That Richardson was the treasurer of Pulaski county, and Gibson was the surety on his bond.

(c)    That Richardson had paid out $29,215.16 upon alleged debts of the county not made in the year 1926, and represented by alleged warrants not issued in the year 1926.

(d)    That the funds paid out were funds arising from taxation levied in for the year 1926.

(e)    That the fiscal court had on January 15, 1926, made an order that the treasurer should not pay out such money. upon any notes, vouchers, claims, or checks for years prior to 1925, and that Richardson paid out this $29,215.16 after notice of this order.

(f)    That the property in Pulaski county, subject to taxation for the year 1921, was $11,815,121, upon which a levy of 50 cents per $100 (the highest permissible levy) had been made.

(g)    That this yielded a revenue of $59,075.60, and was all the funds, assets, or revenue of the county on hand or possible for that year, except a sum not in excess of $6,000, which might have been realized from a poll tax which was not levied.

(h)    That the claims or warrants upon which the treasurer paid out these.funds were issued in the year 1921.

(i)    That $25,000 of the 1921 revenue was required and used to pay the official salaries and other current expenses of the county for the year 1921.

(j)    That, besides paying its current expenses of $25,000 for the year 1921, out of the funds available for that year, and when the vouchers or orders for this $29,-215.16 were issued, and at the time of the attempted in-

curring of the debts for which they were issued the county had already issued vouchers and warrants aggregating $40,374.87, and there was further then an indebtedness existing against the county in notes to Eyer & Co. for $45,000 and funding bonds of the county for $28,500.

(k)   That no election had ever been held by which any of this indebtedness had been authorized.

The county's pleading is by no means a model, still we are able to spell this out of it, and it had stated a case so far as the year 1921 and warrants of that year are concerned. If it is able to establish all these things by proof, it is entitled to some recovery, but how much we do not decide, as that question is not before us.

It is very strenuously argued on behalf of Richardson that no notice was ever given him that this indebtedness was invalid, but in their second amendment to their petition the plaintiffs plead:

"For further amendment to their petition, the plaintiffs state that on January 15, 1926, the court entered an order directing the county treasurer not to pay any notes, vouchers, claims, or checks issued against either the road fund or general fund of this county, prior to the year 1925, without having a specific order of the present court so to do, giving the dates, number, and in whose favor and on what fund, and that at the same time an order of the present court appropriating money for the payment of same.

"That the county judge of Pulaski county notified the defendant county treasurer, on January 20, 1927, by a notice duly served upon said defendant treasurer on the 20th day of January, 1927, by the sheriff of Pulaski county, that said fiscal court had entered an order, a copy of which was delivered to the said defendant treasurer, in which the said treasurer was directed to pay no claims against the county without a specific order directing the plaintiffs to be paid, and at the same time an appropriation out of which to pay same."

As an exhibit with that amended petition the plaintiffs filed copy of an order entered by the Pulaski fiscal court from which the following is taken:

"It is further ordered that the said county treasurer be and he is directed not to pay any notes,

vouchers, claims, or checks issued either against the general fund or the road fund of this county for the years prior to the year 1925 without having the specific order of the present court, so to do, giving the date, number, in whose favor, and on what fund, and at the same time the present court making an order appropriating funds for the payment of same, nor to pay any notes, vouchers, claims, or checks of any fund out of money derived from a levy and collection for another fund; nor to pay the notes, vouchers, claims, or checks issued on any fund for any year with money derived from the levy and collection of revenues for a different year, though it may be the same fund for a different year without the specific order of the present court so to do. . . . The clerk of this court is ordered and directed to deliver a copy of this order to the said county treasurer.''

This was positive notice to the treasurer that the fiscal court did not want him to pay any notes, vouchers, claims, or checks issued prior to the year 1925 without a specific order of the fiscal court, as it was constituted in 1927, directing him so to do, and, as the fiscal court could not revoke an order once made for the payment of a valid claim, this order was equivalent to a notice to the treasurer that these claims were invalid. The treasurer is never required to assume judicial functions, or to undertake to say what orders of the fiscal court are valid and what are invalid; that is a matter for the fiscal court to determine. All he has to do is to obey, and it is true the fiscal court does not tell him in this order that claims issued prior to the year 1925 were invalid; but it does tell him not to pay them, and his present difficulties are not the result of an erroneous judgment on his part, but result from his disobedience. When he received a copy of that notice, he should have obeyed it, and, if the holder of a valid claim had sued him, it would have been the duty of the county attorney, under section 127, Kentucky Statutes, to have defended the action for the treasurer, for this was a matter in which the county was interested

Its allegations as to the years 1922, 1923, etc., are mere conclusions, and, to make its petition for those years sufficient, if it can, it will have to make for those years allegations similar to those made for 1921. We should be getting acquainted with the financial difficulties of this county. See Tarter v. Wesley, 200 Ky. 14, 252 S.

W. 109; Citizens' Nat. Bank v. Pulaski Co., 216 Ky. 332, 287 S. W. 892; Id., 224 Ky. 150, 5 S. W. (2d) 901; Tarter, County Atty., v. Pyles, 217 Ky. 243, 289 S. W. 289. Richardson filed a special demurrer to this petition for defect of parties defendant; it being his contention the county should have made the ones to whom he paid this money parties defendant, but we do not think, in view of allegation (e), that was necessary. If, however, he desires by cross-action to make them parties, he should be permitted to do so.

Richardson relies on Harrison v. Logan County, 129 Ky. 48, 110 S. W. 377, 33 Ky. Law Rep. 465, and says the county cannot sue him, but must sue the parties to whom he paid this money, but allegation (e) made that case inapplicable here. From the allegation (g) it appears that Pulaski county had, in the year 1921, by the highest possible levy upon the property in that county, provided for a revenue of $59,075.60. It also appears that no poll tax was levied, and that, if such had been levied, it would have yielded a sum not in excess of $6,000. Persons contracting with a county have a right to presume the county is going to make every possible effort to comply with its contracts; therefore they have a right to assume the county is going to levy all possible taxes and raise all available revenue. Hence the revenue provided for such year as used in section 157 of the Constitution means all possible available revenue. City of Providence v. Providence Electric Light Co., 122 Ky. 237, 91 S. W. 664, 28 Ky. Law Rep. 1015.

This Providence case was subsequently overruled in the case of Worrell Mfg. Co. v. City of Ashland, 159 Ky. 656, 167 S. W. 922, 52 L. R. A. (N. S.) 880, upon one point in the case, but not upon this one. We had, before writing the Worrell case, cited the Providence case as stating the correct rule for determining this question, in the case of Southern Bitulithic Co. v. De Treville et al., 156 Ky. 513, 161 S. W. 560, and subsequent to the writing of the Worrell case, we cited the Providence case as authority in the case of Carter et al. v. Krueger & Son, 175 Ky. 399, 194 S. W. 553, also in the case of Durrett Construction Co. v. Caldwell County, 196 Ky. 158, 244 S. W. 409, and in the case of Billings v. Bankers' Bond Co., 199 Ky. 490, 251 S. W. 643. In the case of Miles Auto Co. v. Dorsey et al., 163 Ky. 692, 174 S. W. 502, we again re-

ferred to this Providence case as having been overruled, but again explained the point on which it was overruled. Upon the point before us, the Providence case is still the law. Therefore the income and revenue for Pulaski county for the year 1921, must include the $6,000 that a poll tax would have yielded, even though that was not levied and that sum was not raised, and, in determining the debts the county could incur, its revenue must be considered to be $65,075.60. It is admitted that no part of the vast debt apparently incurred by Pulaski county in 1921 was ever authorized by any vote of the people, and, so far as that exceeded $65,075.60, it was affected by section 157 of our Constitution, the terms of which are so well known that we need not quote them, and of the language of which this court said, in the case of Carman & University of Ky. v. Hickman County, 185 Ky. 630, 215 S. W. 408, this:

> "It will be observed that this section is as broad a prohibition against the creation of forbidden indebtedness as language could make it. There is no manner in which, or any purpose for which, such indebtedness may be created that will impart validity to it."

Thus we see that this county, if it then had no debts, started the year 1921 with a power to incur an indebtedness of $65,075.60. Of this it is alleged that $25,000 would be needed to pay the salaries of county officers and to meet the necessary expenses that must be paid. A county cannot commit suicide. It must continue its county government. It owes that to the state, of which it is an arm. Therefore we must first deduct this $25,000, and that leaves a balance available for expenditure during the year 1921 of $40,075.60 if it then owed no debts. In its allegation (j), the county alleged that, at the time the vouchers or orders for this $29,215.16 were issued, and at the time of the attempted incurring of the debts for which they were issued, the county had already issued vouchers and warrants aggregating $40,374.87. Thus we see that, with only $40,075.60 to spend under any circumstances after providing for the maintenance of the county government, it had undertaken to spend $40,374.87, or $299.27 more than it had, under any circumstances, a right to spend. It is also alleged that at that time there was an existing indebtedness against the county of notes

to Eyer & Co. for $45,000 and funding bonds for $28,500, and, as a county cannot be said to have any money to spend except that necessary for the maintenance of the county government until after it has paid its debts, then it would follow that, before this $29,215.16 or any part of it could be valid debt against the county, there must be found some way of getting rid of the debt to Eyer & Co. of $45,000, the funding bonds of $28,500, and the excessive expenditure of $40,374.87, and, when these are added, the result is $113,874.87.

Richardson takes the position that, when the county attacks these debts that he has paid as invalid, the county must prove they are invalid, and hence must allege everything that it would have to prove, and that, in order to make this petition good, it would be necessary for the county to allege and prove that this $113,874.87 was a valid indebtedness. We cannot agree with him. We admit that the county must prove this $29,215.16 was invalid, and must allege facts showing its invalidity; but all county warrants are prima facie valid, and these debts that aggregate $113,874.87 are prima facie valid, and, if Richardson hopes to displace them and thus establish the validity of his debt, then the burden rests on him to al lege and show that these claims aggregating $113,874.87, which were alleged to be older and superior to the ones he had paid, were invalid, or to show the debts represented by the vouchers he paid are older and hence superior to the $113,748.87. We said as much in the case of Carman & University of Ky. v. Hickman County, 185 Ky. 630, 215 S. W. 408, and in deciding that case, we held that, in passing on question of whether an order of a county fiscal court contracting indebtedness is invalid under Constitution, sec. 157, by reason of existing indebtedness exceeding constitutional limitation, the court will assume that the existing indebtedness is a valid indebtedness, and the case of Carter et al. v. Krueger & Son, 175 Ky. 399, 194 S. W. 553, is not authority to the contrary.

The claims paid by the treasurer which aggregated $29,215.16 are prima facie valid. To overcome that prima facie validity the county must allege and prove that, at the time the debts represented by this $29,215.16 were incurred, the county had then already expended the income and revenue provided for that year. To meet that the county alleged, as we have stated, that at the time the debts represented by this $29,215.16 were incurred the county had already incurred debts and contracted

for expenditures aggregating $113,874.87 against the revenue of that year. The county having alleged those things, if it proves them, then the debts represented by this $29,215.16 were invalid, and if Richardson seeks to establish that the debts aggregating $113,874.87 were invalid, and thus to establish the validity of the debts aggregating $29,215.16, then that burden is upon him. He must allege and prove that this $113,874.87 is invalid, in order to displace those debts, and thus establish the validity of the debts that aggregated $29,215.16.

Whoever attacks the validity of a county warrant must sustain the burden, and must establish that the warrant is invalid; as the county has attacked the validity of the warrants, aggregating $29,215.16, it must show that invalidity. If it chooses to do that by alleging and showing that other warrants aggregating $113,874.87 had been issued before the warrants aggregating $29,215.16 were issued, then it has met this burden, and if, in order to establish the validity of the warrants aggregating $29,-215.16, Richardson undertakes to show that the warrants aggregating $113,874.87 were invalid, then that burden is on him.

Richardson contends this petition is defective because it does not allege that the debts he has paid were incurred on the date of the issuing of the vouchers. That is true, but it does allege that both those things happened, that the vouchers were issued, and the obligation incurred after the county had this enormous debt upon it. In the case of McCrocklin v. Nelson County Fiscal Court, 174 Ky. 308, 192 S. W. 494, we discussed this question thoroughly, and, after saying a county should, when it is making its contracts, make allowances for not collecting all of its anticipated revenue, we added this:

> "If, however, in good faith, a county does, in anticipation of its proper revenue, create debts in excess of what it collects, this surplus debt, must be carried as a debt to the next year, and succeeding years until paid, and must be taken account of as an indebtedness of that year, and succeeding years until paid, in exactly the same manner as if the carried over debt was created in the year to which it was carried."

There has been a great deal said in this record about former fiscal courts and present fiscal court. What the parties meant to say was "the fiscal court as hereto-

fore constituted" and the "fiscal court as now constituted." There has never been but one fiscal court in Pulaski county. The personnel has perhaps changed from time to time, but it is the same court. Richardson, in his attack on this petition, says that, when the fiscal court allows a claim, the court acts judicially, and cannot thereafter reconsider its action. That is true. See Prebels v. Chism, 21 Ky. (5 T. B. Mon.) 158; Boone Co. v. Dils, 12 Ky. Op. 482; Slater-Business Printing Co. v. Tincher, 201 Ky. 370, 256 S. W. 722; Lexington & H. T. R. Co. v. McMurtry, 45 Ky. (6 B. Mon.) 214. Such, however, is not true of an order entered upon an invalid claim. Com. v. Richmond, 148 Ky. 849, 147 S. W. 913. We have repeatedly held that, even though the fiscal court has allowed a claim, and the treasurer has paid it, if the claim was illegal, the county can recover it from the man who wrongfully got the money. Mills v. Lantrip, 170 Ky. 81, 185 S. W. 514; Com. v. Richmond, 148 Ky. 849, 147 S. W. 913; Elliott et al. v. Com., 144 Ky. 335, 138 S. W. 300; Id., 144 Ky. 341, 138 S. W. 303; Hopkins County v. Givens, 96 S. W. 819, 29 Ky. Law Rep. 993; Logan County v. Head, 206 Ky. 97, 266 S. W. 883.

Our rights and duties depend on the law, and not on caprice or whim of any man, for our government is one of law and not of men. Still, for the purpose of administration, the law gives power to various men, and these officers or men to whom this power is given must be obeyed. No one is so humble as to be beneath the law's protection, and no one is so powerful as to be relieved from obedience. The Governor in his private car must give obedience to the upraised hand of the traffic policeman at the street intersection.

By sections 1834 and 1840 Kentucky Statutes, the fiscal courts are given control of the fiscal affairs of our counties. We have construed these sections as giving to the fiscal court almost unlimited control of the fiscal affairs of a county. See Shipp et al. v. Rodes et al., 219 Ky. 349, 293 S. W. 543, and cases cited in that opinion.

From section 931 of the Statutes, Richardson derives his power as treasurer. He is required to hold subject to the order of the fiscal court all money received by him as treasurer. He was ordered by the fiscal court not to pay out certain money on certain claims, yet, in spite of that, he paid out these funds on these claims, and, if his act can be justified at all, it is because he paid this money upon valid warrants. He must obey the directions

of the fiscal court, unless he knows it has exceeded its authority. He has paid warrants which the fiscal court at one time ordered him to pay, and later, on January 15, 1926, ordered him not to pay. The treasurer is protected when he obeys the direction of his fiscal court. When a warrant, drawn on him, is presented for payment, it is his duty to pay it, if he has the money to do so, unless he has notice or knowledge the debt is invalid.

The fiscal court, after it allows a valid claim, cannot reconsider its action after the adjournment of the term at which it was allowed, but, when it allows and issued a warrant to pay an invalid claim, its action is absolutely void, and of no more binding effect on the county than if the claim had been approved by a majority vote of the primary class in some of the county schools.

This order of the fiscal court directing the treasurer to pay no claims for years prior to 1925, became, when the treasurer was made aware of it, and we know he was aware of it on January 26, 1926, if not sooner, positive notice to him that the fiscal court considered all of this indebtedness prior to 1925 as invalid, and had revoked all warrants, orders, etc., given for its payment. Such part of it as was valid could not be revoked. Such part as was invalid could be revoked. The treasurer should not have undertaken to determine which part was invalid and which part was not, and any warrants he paid after notice of that order he paid at his peril should they turn out to be invalid. The county has alleged facts showing a number of claims paid by the treasurer were invalid; if it can prove those things, it will be entitled to recover. When the treasurer is confronted by conflicting orders of the fiscal court, he should obey the last one, for the presumption is that body is proceeding within its jurisdiction, and is honestly endeavoring to discharge its duty, and is only doing what it has a right to do. Obedience will give the treasurer complete protection; disobedience brings trouble in its train.

We are not passing on any question in this record except this: This petition was sufficient.

The judgment is reversed, with directions to overrule the demurrers and for consistent proceedings.

The whole court sitting.