# Masonic Widows' & Orphans' Home et al. v. City of Corbin.

(Decided May 7, 1929.)

W. R. HENRY and JAMES GARNETT for appellant Masonic Widows' and Orphans' Home.

STEPHENS & STEELY for appellant Cooper Lodge, No. 668, F. & A. M.

OSCAR W. BLACK and H. H. OWENS, for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Reversing.

This suit was instituted by the appellant, Masonic Widows' & Orphans' Home, a charitable and educational corporation, against its coappellant, Cooper Lodge, No. 668, F. & A. M., to recover judgment for $20,000 and interest, and to enforce a lien on a building owned by the lodge in the city of Corbin. No defense being interposed, judgment was entered on February 4, 1927, in accordance with the prayer of the petition.

The city of Corbin, pursuant to the provisions of chapter 37, Acts of 1926, desiring to have part of the terms of the Whitley circuit court held there (see Messamore v. Webb, 220 Ky. 755, 295 S. W. 1038), rented a portion of the Masonic Hall, owned by Cooper Lodge, as a courtroom. The first term of court was held in that building in September, 1926. After the judgment above referred to was rendered the city purchased the building, to be used in part as a courthouse, for $30,000. Of this, $2,000 was paid Cooper Lodge in cash, and the judgment of the Masonic Widows' & Orphans' Home was assumed, to be satisfied in annual payments of $4,000. The balance of the purchase money was to be paid to Cooper Lodge, after that judgment had been paid.

On March 1, 1927, a deed to the property was duly made by the lodge and accepted by the city. On the same day a collateral agreement was executed by the appellants and the city of Corbin, "in order to more fully set out and declare the terms, conditions, and payments, and the like," than was incorporated in the deed of conveyance, and it also covered the lease of the lodge rooms for 25 years. In this contract it was recited that the city had caused to be executed its vouchers and warrants for the purchase price, except that due the Masonic Widows' & Orphans' Home, which was not done, for the reason that it had been reduced to judgment; the city assuming to

satisfy the decree. This instrument was signed by the mayor of the city, and attested by the clerk. Under the conveyance and collateral contract, the city took possession of the property as the owner on March 1, 1927, and continued to hold the same until May 1, 1928. It defaulted in payment of the first installment of the purchase money, due on February 22, 1928, and on May 11th the city commissioners adopted a resolution repudiating the purchase of the property and the contract, and directing that a deed reconveying the property be executed and delivered.

On May 26th this suit was reinstated on the docket of the Whitley circuit court, and the city of Corbin was made a party defendant by a cross-petition filed by Cooper Lodge, and amended petition of the Masonic Widows' & Orphans' Home. On May 29th the property was placed in the hands of a receiver. The city of Corbin, by an answer, counterclaim, and cross-petition, admitted the foregoing transactions, but denied their validity in so far as they affected the municipality, for these reasons, namely: (1) The action of the council was done pursuant to a motion, and not an ordinance; (2) an indebtedness of $30,000 was created without an ordinance; and (3) the city had already reached its limit of indebtedness under the Constitution. It asked judgment for the $2,000 already paid, that the proceeding be held for naught, and that it be restored to its original status.

Since the purchase of the property the city had established the commission form of government, and there was a different group of officers in power. There was a stipulation of the facts, and upon submission the lower court awarded the city the relief sought. From that judgment the Masonic Widows' & Orphans' Home and Cooper Lodge are appealing.

■ We will consider, first, the validity of the manner in which the transaction was initiated. On February 15, 1927, a motion was duly adopted that the mayor of the city appoint a committee to confer with Cooper Lodge in regard to the purchase of the property. Three days thereafter, at a regular session of the council, on motion unanimously adopted, the council voted to purchase the property for $30,000, "the contract to be drawn up later and approved by common council and signed by the mayor and city clerk." On February 21st, by motion, the mayor and clerk were empowered to borrow $2,100 "to make payment on the Masonic property on corner of

Gordon and Main street, which the city is buying." It is stipulated that the deed from the lodge to the city was accepted, and that the collateral agreement above referred to was simultaneously executed by the parties.

It is contended by appellee that the city was without power to purchase the kind of property involved. By the Act of March 22, 1926 (chapter 37, page 147), the General Assembly gave to the cities of the third class not county seats (which includes Corbin) the right to make suitable provision for the holding of terms of circuit court in those cities. The act seems to have made special provision for Corbin, as it is the only city of the class lying in more than one county. See Messamore v. Webb, supra. It is in the record that the city considered the building sufficient for the purpose, for it advised the judge of the Whitley circuit court to that effect, and it was subsequently used by the court. It is too late now to claim that the building was unsuited for the purpose for which it was acquired. While it is more than ample for the needs of the court, it appears that the building is on the principal street of the city, and there is a substantial income from rents of store rooms and lodge rooms. The city has authority to acquire and hold it. Cf. Board of Councilmen of Frankfort v. White, 224 Ky. 570, 6 S. W. (2d) 699.

The authority of the council to enter into this contract, in addition to that specifically conferred by the Act of 1926, supra, may be found in section 3284, which reads in part as follows: "Subject to the limitations imposed by the Constitution and this act, the council shall have the power to contract debts and to borrow money, and to issue the bonds of the city therefor, and to control the finances and the property of the city."

It is the general rule that, where the charter of a city is silent as to the manner in which legislation may be enacted or other action taken, it may be done by resolution or ordinance. City of Louisville v. Parsons, 150 Ky. 420, 150 S. W. 498. Dillon on Municipal Corporations, sec. 572. The difference between an ordinance and resolution is stated in Robertson, etc., v. Southern Bitulithic Co., 190 Ky. 314, 227 S. W. 453, it being there said: 'In practical operation, however, the distinction between the two depends upon the formalities attending the adoption of the respective acts."

As a practical matter, there is no difference between resolutions and informal motions such as were adopted

here. The authorized body of a municipal corporation may bind it by a resolution, or by vote may clothe its officers or committees with power to act for it, and a contract thus made will be binding. Dillon on Municipal Corporations, sec. 784. It is a well-known principle that, if the city in the first place had the power to make a contract, but had proceeded in a wrong manner, it may thereafter ratify the contract, although it was defective when made. 19 R. C. L. 1065; City of Corbin v. Davis, 193 Ky. 391, 236 S. W. 564; Blanton v. Town of Wallins, 218 Ky. 295, 291 S. W. 372. So if, under a strict interpretation of the statutes, the board should have enacted an ordinance, instead of adopting a resolution, since it appears the city did formally execute the contracts and take possession of the property, securing the consequent benefits, it must be held to have ratified the transaction.

An act of a city council concerning the administration of the business affairs of a municipality ought to be sustained by the courts, unless it clearly violates some restrictive law or well-settled principle generally recognized as a limitation on the powers of the municipality. Wells v. Town of Mt. Olivet, 126 Ky. 131, 102 S. W. 1182, 31 Ky. Law Rep. 576, 11 L. R. A. (N. S.) 1080. Especially ought this rule to be adhered to, where the transaction has been executed and ratified, and where there would be serious interference with vested rights of others, as in the present instance. We are of the opinion that the action of the council was authorized, and, although more formal procedure would have been better, that which was had is sufficient to bind the city.

■ The resolution of the city commissioners, undertaking to repudiate the action of the council and to avoid the responsibilities incurred, was based only on the grounds that the indebtedness exceeded the constitutional limit, and the city had no funds available with which to meet the payments then due, and that none could be had for that purpose. The record merely shows that the bonded indebtedness of the city on March 1, 1927, was $159,000. There is nothing to show what the constitutional limit of indebtedness was at the time. It is disclosed that the city owns a light and water plant worth $600,000, for which most of the bonded indebtedness was incurred.

■ It is stipulated that, at the time each of the four respective bond issues were voted, there was authorized a special levy, not exceeding 20 cents on each $100 of tax-

able property in the city, with which to pay interest and retire the bonds, and that the city has never in any year levied any of these special taxes. The ordinary tax rate has for each year been 75 cents, and 60 per cent. of that revenue has been applied to the payment of interest and for the sinking fund. On December 30, 1927, there was a cash balance in the sinking fund thus accrued of over $25,000. It is further shown that, during the year 1927, the city collected, on light and water bills, $103,023.61; from the ordinary taxes, $25,379.77, from licenses, $9,-781.23; and police court fines, $3,652—making a total actually collected from all sources, $141,836.61. In addition to these collections, it is agreed that $29,001.84 of light and water bills were not collected, and that $13,-282.55 of delinquent ordinary taxes were not collected, making a total of $42,284.39 in uncollected income in the one year. Had only two-thirds of those items been collected, the balance of the purchase price of the Masonic property could have been paid during the year of its acquisition. Moreover, it is shown that Corbin has a population of 12,500. Under the provisions of section 157 of the Constitution, the city might have fixed its ordinary tax rate at $1, instead of 75 cents. Had it levied the special bond taxes of 80 cents and this additional 25 cents, the city would have added to its income $54,127.24. Adding this to the uncollected items, it appears there was $96,411.63 of additional available revenue for the year 1927.

In Vaughn v. City of Corbin, 217 Ky. 521, 289 S. W 1104, the validity of one of the city's bond issues was questioned. In sustaining it the following pertinent pronouncement was made:

> "It is well settled, under section 157 of the Constitution (providing that a city shall not become indebted to an amount exceeding in any year the income and revenue provided for such year without a vote of the people), that the revenue provided for the year is not the revenue actually levied, but the levy which the council was authorized to make. City of Providence v. Providence Electric Light Co., 122 Ky. 237, 91 S. W. 664, 28 Ky. Law Rep. 1015; Overall v. City of Madisonville, 125 Ky. 684, 102 S. W. 278, 31 Ky. Law Rep. 278, 12 L. R. A. (N. S.) 433; Carter v. Kreuger & Son, 175 Ky. 407, 194 S. W. 553.

"It is also well settled that the limitation of 75 cents, in section 157 of the Constitution, does not include levies made to provide a sinking fund for bond issues voted by the people, and that the city council may levy 75 cents for other purposes beside the necessary levy to provide for the payment of the bonds. Montgomery Fiscal Court v. Trimble, 104 Ky. 629, 47 S. W. 773, 20 Ky. Law Rep. 827, 42 L. R. A. 738; Fowler v. Oakdale, 159 Ky. 603, 166 S. W. 195; Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1040; Nall v. Elizabethtown, 200 Ky. 321, 254 S W. 893. If the council had made, year by year, the levies it was authorized to make, the floating debt would not have been incurred. The debt results from the failure of the council to make a sufficient levy, as it was authorized to do."

See, also, Durrett Construction Co. v. Caldwell County, 196 Ky. 158, 244 S. W. 409; and Wesley v. Tartar, County Judge, 197 Ky. 493, 247 S. W. 353. It does not appear that the plea of poverty on the part of the city of Corbin has any merit.

We are of the opinion that the contract and transactions are valid and binding on the city, and, since the lower court adjudged otherwise, the judgment is reversed for proceedings consistent herewith.