## Citizens National Bank's Trustee v. Town of Loyall.

(Decided Nov. 26, 1935.)

E. L. MORGAN for appellant.

J. B. SNYDER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

When the Citizens National Bank of Harlan was placed in receivership, the town of Loyall had on deposit $1,471.38 in a checking account and $3,371.15 in the savings account. The latter was the sinking fund provided for an issue of bonds. The bank owned town warrants amounting to $1,187.64. With the approval of the comptroller of the treasury, it was proposed, in substance and effect, that a part of the assets of the defunct bank should be sold to the Harlan National Bank, and it would assume to pay 50 per cent. of the deposits and act as trustee for the collection of the remainder of the assets and distribution of the proceeds pro rata to the depositors, who were to be given participation certificates evidencing their rights to the trust. It appears that depositors of more than 90 per cent. of the deposits accepted the proposition and it became effective. Such methods of liquidation have received judicial and statutory approval. Doty v. Love, 295 U. S. 64, 55 S. Ct. 558, 79 L. Ed. 1303, 96 A. L. R. 1438; Jennings v. Fidelity & Columbia Trust Co., 240 Ky. 24, 41 S. W. (2d) 537; Compare section 165a-64, Ky. Stats. Supp. 1933; Dorman v. Dell, 245 Ky. 34, 52 S. W. (2d) 892; Milner v. Gibson, 249 Ky. 594, 61 S. W. (2d) 273. A document evidencing this agreement was signed by the chairman and three other members of the board of trustees of the town of Loyall on November 30, 1932. At the next regular meeting of the board of trustees, the matter was before that body. Pursuant to the terms of the instrument, the town received a participation certificate and was paid 50 per cent. of its deposits. A tender of 10 per cent. additional was declined.

When the Harlan National Bank, as trustee of the

depositors of the Citizens National Bank, sued the town to recover on its warrants, the town set up as a counter-claim and set-off its right to recover the entire deposit of $4,842.53. The bank's trustee pleaded the so-called "Creditors' Agreement" in estoppel and bar of the recovery of any sum in excess of what the town was entitled to under it. The town responded with an attack upon the validity of the execution of the agreement in its behalf. The essence of its contention is that the members of the board had acted individually; the agreement had not been executed upon the authority of the board as such; that the town was without power to enter into such an agreement in any event, particularly as it related to the deposit representing the sinking fund, which it asserted was a preferred claim against the assets of the insolvent bank. Upon a trial, the court (a special judge presiding) adjudged the trust agreement not binding upon the town because it was not legally executed, and awarded judgment against the bank as a trustee for the full amount of the deposits, subject to be credited by the warrants and money paid in the distribution of the assets of the Citizens National Bank.

It is conceded that the signing of the paper by the individual members of the board of trustees was ineffective, since a municipality can function and speak only by its records, and is not bound by any promise or attempted commitment by the members of its council or board of trustees acting individually or collectively, except when in session as such body, and its journal speaks of such action. Section 3697, Kentucky Statutes. McDonald's Adm'x v. Franklin County, 125 Ky. 205, 100 S. W. 861, 30 Ky. Law Rep. 1245; Spalding v. City of Lebanon, 156 Ky. 37, 160 S. W. 751, 49 L. R. A. (N. S.) 387; Fox v. Lantrip, 162 Ky. 178, 172 S. W. 133; Postlethweighte v. Towery, 258 Ky. 468, 80 S. W. (2d) 541. However, if an act done for or in behalf of a municipality was within its corporate powers, the council or board of trustees may ratify it. Such act then effectually becomes as much the act of the municipality as if it had been done in proper and legal manner in the first instance. Nickels v. Board of Councilmen of the City of Frankfort, 111 S. W. 706, 33 Ky. Law Rep. 918; Masonic Widows' & Orphans' Home v. City of Corbin, 229 Ky. 375, 17 S. W. (2d) 215, 217;

Fabric Fire Hose Co. v. City of Louisa, 253 Ky. 407, 69 S. W. (2d) 726.

There are presented two aspects of the validity of the trust agreement: First, whether the city had the authority to execute it; and, second, whether there was a ratification of its execution.

This was an administrative or business act. The board of trustees of a city of the sixth class, of which Loyall is a member, has the power to do the several specific things enumerated in the statute; "to pass ordinances not in conflict with the Constitution or laws of the Comonwealth or of the United States" (section 3704-1, Ky. Stats.) and "to do and perform any and all other acts and things necessary or proper to carry out the provisions" of the chapter relating to that class of cities (section 3704-7, Ky. Stats.), subject, of course, to the several prohibitory provisions. And, quite obviously, municipal officers may not violate fundamental laws or legal principles controlling public officers generally. As stated in Wells v. Town of Mt. Olivet, 126 Ky. 131, 102 S. W. 1182, 31 Ky. Law Rep. 576, 11 L. R. A. (N. S.) 1080, in the exercise of its powers, the board of trustees is invested with a large discretion and great latitude in govermental and administrative affairs coming within the powers granted by the statutes, the presumption being indulged that they do not exceed their authority. So when the aid of the court is invoked to declare an act void, it must clearly appear that it is inherently violative of the statute, or of some well-settled legal principle.

Here the funds of the town were tied up in a closed and apparently insolvent institution. Not only does the evidence show it, but the very fact that practically all of the depositors agreed upon this method of liquidation in preference to complete receivership indicates that prudent business men regarded it as the better plan for recovering their money. It was not far from being a compromise and scheme of salvage, as is suggested by the appellant. In the absence of statutory limitations, municipal corporations have the power to enter into compromise agreements as an incident to their powers appertaining to the subject-matter involved. 5 R. C. L. 885; 19 R. C. L. 775. It is a daily practice of cities to settle disputed claims both for and against themselves. We think it is a necessary im-

plication from the discretionary power to° conduct its own financial affairs that the city had the power to enter into the agreement.

While the law does prescribe the sequestration of the proceeds of special levies, particularly sinking funds, and does render the officers civilly and criminally responsible for diversion or misappropriation (section 4281u-2, Ky. Stats.), we do not regard this agreement as violating those laws in any respect. There was no appropriation or expenditure of any of the funds. There was simply a prudent effort to save those funds for the purpose to which they were assigned by consenting to a preferable legal method of salvage. The subsequent developments showing that the few non-assenting depositors were paid in full can make no difference. The proposition was accepted by other depositors in consideration and on the faith of this agreement, and rights inured to them by reason thereof.

We turn to the question of ratification. At the regular meeting of the board of trustees held on December 5, 1932, three of the four members who had signed the agreement, and the one who had not done so, were present. The minutes of that session are exceedingly informal, and merely recite that such and such reports and bills were presented and approved. Likewise, that certain payments which had been made were approved. No vote is recorded on any of the propositions. Concerning the matter involved, there appears only the following record:

"Treasurer advised that the Citizens National Bank of Harlan closed up on $1471.38 checking account and $3371.15 bond issue. It was agreed unanimously that all money that may, be realized from the liquidation of the accounts of the Citizens National Bank be placed to the account of the sinking fund and that all interest coming from the amount deposited in the sinking fund also be applied to the sinking fund.

"The Chairman advised the Board of Trustees had considered the plan of liquidating the funds and accounts of the Citizens National Bank as proposed by the Comptroller of the U. S. Treasury and had voted favorably for its adoption."

At the next meeting of the board, those minutes were read and approved.

The statutes relating to methods of procedure and operation of boards of trustees of sixth-class towns are not as definite or specific as those relating to larger cities. Greater freedom, and latitude of action is authorized. Thus, while such a board must cause its clerk to keep an accurate journal of its proceedings, no yea and nay vote need be taken and entered on the minutes unless expressly desired by a member. Section 3698, Ky. Stats. In many, if not most, of the smaller city and school boards, little formality or exactness is observed in recording their acts. The prevalence of such informality is such that the court has had occasion several times to say that the same exactness is not required as in keeping court records. It is sufficient if the purpose and intent to do an act is apparent, although when the statute prescribes that a particular method shall be pursued, such as the taking of a yea and nay vote, the observance must be manifest. Trustees of Hazelgreen v. McNabb, 64 S. W. 431, 23 Ky. Law Rep. 811; Town of Mt. Pleasant v. Eversole, 96 S. W. 478, 29 Ky. Law Rep. 830; Carter v. Krueger & Son, 175 Ky. 399, 194 S. W. 553; Baker v. Combs, 194 Ky. 260, 239 S. W. 56; Fidelity & Deposit Co. v. Commonwealth, 252 Ky 476, 67 S. W. (2d) 719. Therefore, the case must be viewed from the standpoint that the law neither exacted nor expected technical precision in the records of the board.

While the record is meager, we regard it as evidencing the fact that the subject was considered at this meeting, and the previous individual action of the members of the board was approved by the official body, and that the purpose of this entry was to record that approval. As stated in Masonic Widows' & Orphans' Home v. City of Corbin, supra:

"An act of a city council concerning the administration of the business affairs of a municipality ought to be sustained by the courts, unless it clearly violates some restrictive law or well-settled principle generally recognized as a limitation on the powers of the municipality. Wells v. Town of Mt. Olivet, 126 Ky. 131, 102 S. W. 1182, 31 Ky. Law Rep. 576, 11 L. R. A. (N. S.) 1080. Especially ought this rule to be adhered to, where the transaction has been executed and ratified, and where there would be serious interference with vested

rights of others, as in the present instance. We are of the opinion that the action of the council was authorized, and, although more formal procedure would have been better, that which was had is sufficient to bind the city."

The court should have rendered judgment for the bank as trustee against the town for the amount of the warrants subject to the counterclaim and set-off of the town's proportionate share in the proceeds of the deposits and assets in the hands of the trustee, which it appears has not yet been determined.

Judgment reversed.