## City of Newport v. McLane et al.

(Decided Sept. 25, 1934.)

(As Modified on Denial of Rehearing Dec. 18, 1934.)

804

L. W. SCOTT and CARL H. EBERT for appellant.

BENTON, BENTON, SMITH & LUEDEKE, BARBOUR & BASS-MANN, and L. J. CRAWFORD for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal requires the differentiation of the legislative and administrative functions of a board of commissioners of a city of the second class, and the determination of their personal liability to the city for a diversion of a portion of its sinking fund. We shall hereafter use the term "divert," or "diversion," in the sense of turning money belonging to one fund, permanently, from its purpose or the final appropriation of it, to some other use of the city. Gates v. Sweitzer, 347 Ill. 353, 179 N. E. 837, 79 A. L. R. 1151.

The city of Newport is a city of the second class. Originally it operated under an aldermanic and a councilmanic form of government.

Section 3235c-1 et seq., Kentucky Statutes, authorized it to adopt a commission form of government, which it did. Jones et al. v. Cassidy, Mayor, et al., 154 Ky. 748, 159 S. W. 562; Bryan v. Voss, 143 Ky. 422, 136 S. W. 884; City of Paducah v. Gibson et al., 249 Ky. 434, 61 S. W. (2d) 11. Section 3235c-2 provides that after it avails itself of the act of which section 3235c-2 is a part, then all laws applicable to the government of cities of the second class acting under the aldermanic and councilmanic form of government not inconsistent therewith shall continue to apply to a city availing itself of section 3235c-1 et seq.

Section 3190, which was in force at the time of the enactment of sections 3235c-1 to 3235d-2, inclusive, provides:

"The mayor and president of the board of aldermen, and president of the board of councilmen, shall constitute the commissioners of the sinking fund. It shall be their duty to see that at all times the proper amount of money to pay the principal and interest of the bonded indebtedness of the city, as such may mature, is provided in due time and preserved exclusively for the payment of said liabilities."

Sections 3235c-10 and 3235c-11 provide for the election and qualification for designated terms, a mayor and four commissioners; section 3235c-12 provides the mayor and four commissioners shall constitute a board of commissioners in which shall be vested all legislative, executive, and administrative power of the city, save as otherwise provided in the act of which it is a part. Section 3235c-16 divides the administrative departments into five classes: Department of Public Affairs, Department of Public Finance, Department of Public Safety, Department of Public Works, and Department of Public Property. Section 3235c-17 empowers the commissioners to determine the functions of each department and prescribe the duties of its commissioner. Section 3235c-18 confers the duty of the commissioner of the Department of Public Affairs upon the mayor with the power of general advisory supervision over the affairs of all the departments. It also confers upon the commissioners of public finance, public safety, public works, and public property general superintendency of the Departments of Public Finance, Public Safety, Public Works, and Public Property, respectively. Section 3235c-27

mandatorily requires the mayor and eacn commissioner to execute a bond to the city in the penal sum of $10,000 each, conditioned on the faithful performance of his duties upon which an action may be maintained by any person or persons interested in the keeping of the covenants therein contained.

Section 3175 requires ordinances or resolutions levying a tax to specify distinctly the purpose for which the tax is levied. Section 3194 imposes the duty on the board of commissioners, when required, to set up, invest, and carry a sinking fund for the redemption of the bonds of the city as therein provided.

With these and other provisions of the statutes and section 180 of our Constitution in mind, the duty devolves upon us to review the facts alleged in the petition, and determine whether they are sufficeint to constitute a cause of action in favor of the city against the members of the board of commissioners and their sureties.

The facts alleged therein substantially are: Fred L. McLane was elected at the November election, 1927, and on the first Monday in January, 1928, qualified as mayor of the city by taking the oath of office and executing bond in the penal sum of $10,000 for the faithful performance of the duties of his office, with the National Surety Company of New York as surety; at the November election, 1929, Arthur C. Hindman, Myles A. McIntyre, J. Gil Davis, and James Fuller, respectively, were elected commissioners of the city, and on the 1st day of January, 1930, each executed and delivered a bond in the penal sum of $10,000 for the faithful performance of the duties of his office as commissioner of the city; for Hindman, the Fidelity & Casualty Company of New York; for McIntyre and J. Gil Davis, the Detroit Fidelity & Surety Company, and for James Fuller, the United States Fidelity & Guaranty Company, as surety; their respective bonds were approved by the judge of the county court and filed of record. The sureties on the bonds, in effect, covenanted with the city of Newport in the penal sum of $10,000 that the principal therein would faithfully perform and discharge the duties of his office, and if he should fail so to do, the surety would pay the damages thereby sustained by any person or persons, not exceeding the sum stated in the bond.

On December 15, 1931, the board of commissioners acting in its legislative capacity, by unanimous vote, adopted a resolution which reads:

"Be it resolved by the Board of Commissioners of the City of Newport, Kentucky, that a sufficient fund of money be transferred temporarily from the sinking fund to the various sub-funds of the General Fund that are deficient by reason of the fact that the June and October, 1931 taxes are not fully collected, said sinking fund to be reimbursed in the apportionment of 1932. Adopted by the Board of Commissioners, December 15th, 1931. Reading rules suspended, adopted by second reading, on suspension, yeas: Messrs. Davis, Fuller, Hindman, McIntyre and Mayor McLane. On adoption: Yeas: Messrs. Davis, Fuller, Hindman, McIntyre and Mayor McLane."

On the day of the adoption of this resolution there was on deposit in the designated depository of the city the sum of $346,602.74 belonging to the sinking fund, which had been levied and collected under ordinances specifying distinctly the purpose for which the tax was levied and which had been collected thereunder solely for the purpose of paying the bonded indebtedness of the city as and when same matured and "for no other purpose whatsoever." After the adoption of the resolution, the board of commissioners misappropriated $79,067.70 of the $346,602.74, by causing the same to be placed to the credit of the accounts of the different departments of the city, and thereafter expended the same for these departments; no part of the $79,067.70 was applied to the payment of either interest or principal of the bonded indebtedness for which it had been levied and collected.

At the time of the expiration of their several terms of office, no part of the $79,067.70 had been restored to the fund from which it was taken.

This action was instituted to recover of them the $79,067.70 with interest, and of their sureties the several amounts of their respective bonds. A general demurrer was sustained, and the petition dismissed.

The members of the board and their respective sureties are here insisting the board of commissioners, as a legislative body, possessed the power to pass the

resolution of December 15, 1931 authorizing the transfer, temporarily, of the $79,067.70 belonging to the sinking fund, to the credit of the various sub-funds of the general fund and to authorize its appropriation for governmental purposes other than that for which it had been levied, collected, and deposited, and since there is no allegation in the petition that the commissioners appropriated any of the money to their own use, no cause of action is stated and none exists in favor of the city against the members of the board or their respective sureties. Their argument is thus summarized in their brief:

"The Board of Commissioners in passing the resolution complained of were acting as a legislative body and it is a general rule that the members of legislative bodies cannot be held personally liable or responsible in civil actions based upon their voting, cast in the exercise of the discretion vested in them in virtue of their office either for or against any particular legislation."

This principle is deducible from the authorities they cite to sustain their argument. See Commonwealth v. Kenneday, 118 Ky. 618, 82 S. W. 237, 26 Ky. Law Rep. 504, 4 Ann. Cas. 940; Russell v. Bell et al., 224 Ky. 298, 6 S. W. (2d) 236; Duncan v. Combs et al., 131 Ky. 330, 115 S. W. 222; Village of Hicksville v. Blakeslee et al., 103 Ohio St. 508, 134 N. E. 445, 22 A. L. R. 119; Lough v. Estherville, 122 Iowa, 479, 98 N. W. 308; Amperse v. Winslow, 75 Mich. 234, 42 N. W. 823; annotation 22 A. L. R. 125 et seq. Its soundness and universality are not debatable. The statement of the principle upon which they rely must be regarded in the connection with which it is used in the particular case. The courts are agreed this principle is applicable and controlling in actions in which a legislative act or the exercise of a legislative power alone is involved.

The determinative question in the present case is: Does this principle apply to, and control, the facts alleged in the petition? Section 3235c-12 vests in the members of the board of commissioners, triune powers —legislative, executive, and administrative. Section 3235c-16 classifies five administrative departments of the city. Section 3235c-18 divides these administrative functions among the members of the board of commissioners. After the commission form of government

was adopted by the city, the duty theretofore imposed by section 3190 on the mayor, president of the board of aldermen, and president of the board of councilmen, as commissioners of the sinking fund, devolved upon the board of commissioners, created by section 3235c-12. The provisions of section 3190, except in that it designates the mayor and presidents of certain boards as the commissioners of the sinking fund, are not inconsistent with section 3235c-1, et seq.

Section 3190 plainly requires the tax levied, collected, and deposited to the sinking fund, with which "to pay the principal and interest of the bonded indebtedness of the city," shall be "preserved exclusively for the payment of said liabilities." And section 3194 provides whenever "there shall be a surplus of said funds which cannot be applied on such terms to the extinguishment of said liabilities, the commissioners may invest the same in bonds of said city, for which it is liable in its corporate capacity, or in bonds of the state of Kentucky or of the United States; or may invest said funds in such other interest-bearing or dividend-paying securities as now authorized, or which may hereafter be authorized, by K. S. sec. 4706, or other general law of the state, for the invesment of funds held by persons or corporations in a fiduciary capacity. Any loan or investment heretofore made of the sinking funds of a city of the second class which would be authorized and valid if made after this act takes effect, is hereby ratified." "All money, bonds and securities belonging to the sinking fund" are by section 3192 required to be "kept in a separate account, and such money, bonds and securities shall only be paid out or disposed of by the order of the commissioners of the sinking fund, and in case of money upon a warrant signed by the city clerk, countersigned by the auditor and approved by the mayor." These statutory duties are purely administrative, and in no sense legislative.

The manifest intention and purpose of these provisions was to enjoin upon the administrative officials of this class of cities the exclusive duty to comply with section 180 of the Constitution respecting the appropriation of the tax levied for the sinking fund. It is plain to our mind the sole purpose of these provisions was to make the administrative officials of these cities the permanent custodians of the sinking fund, with limitations of their power over it, subject to the restrictions set

forth in them. The very language of section 180, and section 3175 of the Statutes, inhibits the board of commissioners exercising its legislative function, and in effect declares its legislative authority shall cease as to the sinking fund, after the levy of the tax for sinking fund purposes is completed. After the levy was made by an appropriate ordinance, the tax collected in accordance therewith, and deposited to the credit of the sinking fund, the board of commissioners as a legislative body or in its capacity as a legislative body was thereafter without right to divert, by resolution or otherwise, the fund thus appropriated by the law to the sinking fund. See Board of Education of City of Covington v. Board of Trustees of Public Library of the City of Covington, 113 Ky. 234, 68 S. W. 10, 24 Ky. Law Rep. 98; City of Cynthiana v. Board of Education, 52 S. W. 969, 21 Ky. Law Rep. 731; Board of Education of City of Paducah v. City of Paducah, 108 Ky. 209, 56 S. W. 149, 21 Ky. Law Rep. 1650; City of Louisville v. Button, 118 Ky. 732, 82 S. W. 293, 26 Ky. Law Rep. 606; Owensboro Waterworks Co. v. City of Owensboro, 96 S. W. 867, 870, 29 Ky. Law Rep. 1118; City of Paducah v. Board of Education of City of Paducah, 146 Ky. 639, 143 S. W. 1; Lambert v. Board of Trustees of Public Library, 151 Ky. 725, 152 S. W. 802, Ann. Cas. 1915A, 180; Collins v. Henderson, 11 Bush, 74. To the same effect, see State v. Lawson, 110 W. Va. 258, 157 S. E. 589; Collins v. Humphrey, 181 Ark. 609, 27 S. W. (2d) 102; Burbank Irr. Dis. v. Douglass, 143 Wash. 385, 255 P. 360; City of Austin et al. v. Cahill, 99 Tex. 172, 88 S. W. 542, 89 S. W. 552; Davis v. Laughlin, 147 Iowa, 478, 124 N. W. 876; Chamberlain v. City of Tampa et al., 40 Fla. 74, 23 So. 572; So. Ry. Co. v. Board of Com'rs of Buncombe County, 148 N. C. 248, 61 S. E. 700.

Also, see In re Opinion of the Judges, 59 S. D. 469, 240 N. W. 600; White Eagle Oil & Refining Co. v. Gunderson, 48 S. D. 608, 205 N. W. 614, 43 A. L. R. 397; Aldrich v. Collins, 3 S. D. 154, 52 N. W. 854; Cooley on Taxation (4th Ed.) sec. 1817; National Bank of Lawrence v. Barber, 24 Kan. 534; Chambe v. Durfee, 100 Mich. 112, 58 N. W. 661; People ex rel., etc., v. Lippincott, 65 Ill. 548; School District v. Smith; 97 Or. 1, 191 P. 506; Epperson v. Howell, 28 Idaho, 338, 154 P. 621.

Their power over the sinking fund committed by the Statutes to their control for disposition in accordance with the Constitution and Statutes, and their ob-

ligation to the fund, are equivalent to those of an ordinary trustee, clothed with the power to preserve, invest, or pay out assets intrusted to his control.

They had no more right to divert the same from the purpose which it was levied and collected than an ordinary trustee has to divert a specific pecuniary legacy, even though the purpose to which he may divert it may be within the terms of the instrument creating the trust, and ever so laudable.

The courts, indeed all authorities, seemingly without an exception, agree that when a tax is levied, whether by a fiscal court, city council, or a board of commissioners of a city, or trustees of a town, or other legislative body, by a resolution, ordinance or other legislative procedure, specifying distinctly the purpose for which it is levied, the legislative body making the levy, after the tax shall have been collected, does not thereafter have any legislative authority over it for the purpose of diverting it so long as the purpose for which it was collected exists. A fortiori those administrative officials into whose custody and control the law intrusts the same with the authority to invest, preserve, or pay it out, are without authority to divert it. There is no manner in which or any purpose for which a tax levied and collected for a distinctly specified purpose may thereafter be diverted so long as the purpose exists for which it was levied, without violating section 180 of the Constitution. The levying it for a distinctly specified governmental purpose is, ex necessitatas, an appropriation for a protected use, and a tax levy so appropriated is beyond the power of officials, in their discretion, to divert it. See cases supra. Therefore, the resolution of the board of commissioners of December 15th was constitutionally invalid. The members of the board of commissioners must be presumed to have had knowledge of the intendment and meaning of section 180 of the Constitution and also of section 3175 of the Statutes at the time of its adoption. Their language is too plain, simple, and free from ambiguity and doubt to be misunderstood by them. Pulaski County v. Richardson, Tr., 225 Ky. 556, 9 S.W.(2d) 523. The resolution of December 15th was an act of their own as a legislative body, and it was their constitutional duty to disregard it and comply with the Constitution and Statutes defining their duty and restricting their authority respecting the protected use of the sinking

fund. Their possessing, under the statutes, dual capacities; that is, legislative and administrative, cannot avail them, nor can their own act in the capacity of the former serve as a shield to save them from civil liability for their own act as administrative officers, engaged in in direct violation of the plain and unequivocal language of both the Constitution and the Statutes.

There can be no watershed of decision with administrative or ministerial officials whose duty it is under a statute expressly requiring them safely to keep, preserve, invest, or pay out a public fund collected for a constitutionally protected use. And when confronted with a condition requiring them to choose whether they will observe and obey the Constitution governing their duty respecting a public fund, collected for a use so protected or a constitutionally invalid legislative act directing its diversion, if they comply with the latter and disregard a plain, simple, and unambiguous provision of the Constitution (section 180), expressly forbidding their official act in relation to the fund, they are civilly liable to the government for the consequences of their action. It is logically clear that if administrative officials may, ad libitum, depart from or disregard an expressed, constitutional inhibition, intended to prevent the diversion of a public fund which has been by both the Constitution and the Statutes dedicated, or set apart, for a distinctly specified purpose without incurring a civil liability therefor, taxation will be in confusion, taxpayers will be wanderers, exhausted by the payment of additional or increased taxes, and the government without funds, with its liabilities augmented. Unless such officials observe and obey the plain and positive mandates of the Constitution, in respect to a public fund, committed by the Statutes to their authority, the very purpose of the Constitution will be endangered, if not defeated. The state Constitution is the ark of state sovereignty. It is the thing that constitutes the government· and the government is the creature of the Constitution. The principles which it preserves should be to all officials what, spiritually, Sinai's law was to the ancient Jews. The obligations of the courts forbid their condoning either a departure from, or a disregard of, a constitutional or statutory provision by administrative officials who are by the Statutes made the custodians of public funds with restricted authority to control and dispose of the same.

The pending case is an exemplification of the evil consequences of administrative officials diverting a public fund, in violation of section 180 of the Constitution and the Statutes prescribing and restricting their authority over it. A vacuum has been thereby created in the sinking fund of the city, the responsibility for the payment of future taxes thus imposed upon the taxpayers, and the liability of the city still in existence.

The members of the board and their sureties find much consolation in the principles stated in Duncan v. Combs et al., 131 Ky. 330, 115 S. W. 222. In that case the cause of action was based on the charge that as a legislative body the defendants had failed to observe the Constitution and the Statutes dealing with levying taxes in the adoption of an ordinance making the levy. The facts charged against them only involved the acts of the defendants as a legislative body, not as either executive or administrative officials.

True it is, in the pending case, the board of commissioners, in the exercise of their capacity as a legislative body, adopted the resolution of December 15, 1931, directing the diversion of the $79,067.70 belonging to the sinking fund; but the cause of action set up in the petition is founded upon the basic fact that as administrative custodians of the sinking fund, in utter disregard of their constitutional and statutory duties in relation to this fund, they diverted the $79,067.70, and at the end of their respective terms of office the sinking fund by reason thereof was, and yet is, short that amount. The diversion was accomplished by them, not as a legislative body, although their act in doing so was preceded by their action as a legislative body, but they did so ultimately as administrative officials, to whom the law had intrusted the custody and control and the power to invest, pay out, or preserve, for the purpose for which it was levied, the fund they diverted.

In Owensboro Waterworks Co. v. City of Owensboro, supra, money was taken from the general fund of the city with which to pay for the services of brokers employed by the city to sell bonds issued by it for the sole purpose of constructing a waterworks plan. We held that the sum paid out of the general fund for services of the brokers could not be deducted from the proceeds of the bonds when sold. Continuing, we stated:

"The appellees (the city council) misapplied this

fund, which, as said before, was collected for the payment of interest and creating a sinking fund; but it does not follow that the city can be compelled to commit another irregularity so as to replace to the credit of the proper fund. The $200,-000 realized from the sale of the bonds was especially appropriated for the construction of a waterworks system for the city. If the city council should be compelled to appropriate any part of that sum to replace the general revenue fund of the city, which had been misapplied, it would, in effect, be requiring it to commit one wrong to right another. * * * The money so collected was misapplied by the appellees, as said before, and this error cannot be corrected by this procedure."

In Dishman v. Coleman, 244 Ky. 239, 50 S.W.(2d) 504, 508, an action was brought by the commonwealth through its auditor to recover of the state treasurer and his surety the sum paid out by the latter in running his office, which was in excess of the amount of the appropriation made for that purpose.

In Commonwealth v. Tate et al., 33 S. W. 405, 17 Ky. Law Rep. 1045, the action was to recover of Tate and his bondsmen the money he had diverted or willfully misapplied as treasurer of the commonwealth.

The bonds in the Dishman and the Tate Case were conditioned upon the faithful performance of their respective official duties, substantially the terms of the bonds here involved.

In the Dishman Case the treasurer applied the funds of the commonwealth drawn by him in excess of the budget to a lawful purpose, just as did the board of commissioners in the pending case. Our conclusion was thus written:

"This court has no alternative but to hold public officials to a strict accountability under the law, and even though the officer (Dishman) thought he was doing what was best for the commonwealth, and had the concurrence of the Attorney General at the time, the fact remains that in a government of law and not of men such an error of judgment on the part of an officer renders him civilly liable for any loss resulting to the commonwealth. * * *In this instance the money was paid out of the state treasury on

the treasurer's official check, and his liability, as well as that of his surety, is not predicated upon a mere receipt of the money, but upon his own act in causing it to be taken from the treasury, when there was no legal authority therefor.''

See Commonwealth v. Tate, 89 Ky. 587, 13 S. W. 113; Commonwealth v. Carter, 55 S. W. 701, 21 Ky. Law Rep. 1509; Stewart v. Commonwealth, 104 Ky. 489, 47 S. W. 332, 20 Ky. Law Rep. 686; City of Princeton v. Baker, 237 Ky. 325, 35 S. W. (2d) 524, 527.

In City of Princeton v. Baker et al., a city treasurer wsa sued to recover a sum paid out by him by the order of the board of council. It was our conclusion:

''Even if the payment [by the treasurer] had been duly authorized by the board of council, it could be recovered, since such payment was forbidden by the Constitution. * * * The surety upon the bond of the treasurer is liable for any breach of the terms of the bond, and, whilst the pleading does not aver in so many words a breach of the bond, it does allege facts showing an illegal appropriation of money from the treasury, which constitutes a breach of the bond. * * * The cause of action in this case consisted of the right of the city to recover the money withdrawn from the treasury by Mr. and Mrs. Baker, which they are charged with doing in violation of an official duty to the city. * * * 46 C. J. p. 1041; 22 R. C. L. 463, sec. 128, p. 507, sec. 191; Stephens v. City of Ludlow, 159 Ky. 729, 169 S. W. 473; Russell v. Tate, 52 Ark. 541, 12 S. W. 130, 7 L. R. A. 180, 20 Am. St. Rep. 193.''

The principles, and the reasons therefor, stated in the Dishman, Tate, Baker, and the Owensboro Cases are applicable and controlling in the present one.

The argument is made that the members of the board of commissioners did not apply any part of the $79,067.70 to their own use. So it was in the Dishman Case. The result so far as the city is concerned is identical as if they had appropriated the fund to their individual purposes. It was to protect the city against just such a diversion that the statute exacts of each of the commissioners, on being inducted into office, the bond with surety in the penal sum of $10,000. The diversion, as it is alleged in the petition, was a breach of

their bonds. The resolution of December 15th being constitutionally invalid, it affords them no protection against their liability to the city arising out of the breach of the bond, though they acted in accordance with the resolution and thought they were doing what was best for the city. Neither expediency, nor an emergency created by their own actions, may be invoked to avert their liability arising out of their diversion of the city's fund in violation of the Constitution and in plain disregard of the Statutes. The measure of the recovery as to the members of the board is the sum diverted, and as to the sureties, not exceeding the amount of their several bonds.

We deem it proper to add that it will be competent for the commissioners and their sureties to plead the facts showing the debts and claims, to the payment of which any portion of the $79,067.70 was applied, were such as the departments to which same was apportioned by the resolution had the authority to incur and to show by clear and convincing evidence that when the sum paid thereon, out of the $79,067.70, is added to the other debts and liabilities paid out of the taxes levied for that year, the aggregate did not exceed the levy and estimated taxes thereunder for the year 1931, and to the extent that all debts and claims so paid for the year 1931 do not exceed the total estimated taxes for that year, they will be entitled to offset that portion of the claims and debts paid out of the $79,067.70 which, when so added to the other paid claims and debts, do not in the aggregate exceed the estimated taxes levied for the year 1931, against their liability for the $79,067.70, but no more.

The motion to dismiss this appeal as to the National Surety Company is overruled.

Wherefore, the judgment is reversed for proceedings consistent herewith.