## Clay v. Board of Regents of Morehead State Teachers' College.

(Decided Oct. 26, 1934.)

S. S. WILLIS for appellant.

BAILEY P. WOOTTON, Attorney General, and WM. R. ATTKIS-SON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The Morehead State Normal School was organized and is maintained pursuant to chapter 55, page 88 of the Acts of the 1924 Session of the Legislature, and which is now sections 4535b-4a to and including 4535b-4j of the 1930 Edition of Carroll's Kentucky Statutes. The appellee and defendant below, Board of Regents of the Morehead Teachers' College, was created thereby a body politic and vested with certain administrative duties pertaining to the management and maintenance of the school and matters connected therewith. It, by a unanimous vote of its members, determined that the school needed a water, heating, power, and lighting plant with a water line to the North fork of Triplett creek for the purpose of equipping the school buildings with such utility necessities. The needed funds for that purpose ($255,000) were not available and steps were taken by defendant to procure them from the Federal Public Works Administration, 30 per cent. of which under the statute was to be donated to the project, and the remaining 70 per cent. to be assumed by the college through its board, promising and agreeing to pay a stipulated sum annually for a designated period until such per cent. of the advanced amount was fully paid. Before the arrangements were completed a doubt arose as to the authority of defendant to incur the debt for the purposes indicated, and to remove it the General Assembly of this commonwealth, which was then in ses-

sion, enacted the enabling chapter 72, page 370 of the Acts of 1934, and which is now sections 4535m-1 to and including 4535m-14 of the 1934 Supplement to our Statutes, supra. Its title says: "An Act to authorize the University of Kentucky, any of the State Teachers' Colleges and other state educational institutions to acquire, by construction or extension, buildings to be used in connection with such institutions and to issue bonds therefor, payable from the revenues of such buildings, and declaring an emergency to exist."

It is followed by a preamble reciting facts showing the necessity of certain improvements to the institutions mentioned therein and the lack of funds to procure them, as well as the opportunity to obtain them from the Federal Public Works Administration, 30 per cent. of which would be borne by the federal government, and the remainder by the institution seeking the improvements. The first recitation says: "Whereas, Many of the state educational institutions of Kentucky are without proper and suitable dormitories, health buildings and other physical facilities thus endangering the health, safety, convenience and general welfare of the students thereof." After the act became effective, defendant Board adjusted its application to conform therewith; but before the money was advanced by the Federal Public Works Administration plaintiff and appellant, James C. Clay, as a resident taxpayer of the commonwealth and also of the county of Rowan and city of Morehead, for himself and other taxpayers of the state, filed this declaratory judgment action in the Franklin circuit court against defendant, and in his petition he alleged that the Kentucky enabling statute, supra, did not confer the authority upon defendant to incur the proposed debt for the purposes indicated, but only gave authority for it to so borrow funds for the construction of college "buildings," and that the proposal to borrow funds for the acquisition of a water, heating, and lighting plant exceeded the authority given by the enabling act, and for which reason it would be invalid. The proper interpretation of the enabling act was, therefore, submitted to the court, the defendant making a contrary contention. The court sustained defendant's demurrer filed to the petition and dismissed it, from which judgment plaintiff prosecutes this appeal.

It will thus be seen that the question presented is a narrow one. No question as to the validity of the enabl-

ing act is raised or attempted to be presented, nor do we perceive any grounds therefor, since the college proposed to be benefited by the improvement is not a municipality or taxing district within the provisions of sections 157 and 158 of our Constitution with reference to the limiting of indebtedness, and we have been cited to no provision of that instrument inhibiting the Legislature from conferring the power and authority on such institutions as is attempted by the enabling act. However, if it, through the language employed therein, confined the authority conferred to a specific and clearly indicated purpose or purposes, then it could not be exercised for the accomplishment of a different purpose outside of and beyond such limitations. So much is perfectly clear under thoroughly established rules of statutory interpretation, and which was approved and applied by us in the case of Hager, Mayor, etc., v. Board of Education of City of Ashland, 254 Ky. 791, 72 S. W. (2d) 475. In that case the language of the involved statute was clearly so limited, and the also involved election (which was necessary under it for the incurring of the indebtedness and the issuing of the bonds) submitted to the voters the limited proposition to expend the funds for specific purposes, none of which were embraced by what was proposed to be done therewith, and which proposal was successfully attacked by the plaintiff in that action. It was, perhaps, because of that opinion that this action was brought to obtain a certified interpretation of the 1934 enabling act.

Its first section says: "That for the purpose of providing buildings to be used in connection with the University of Kentucky, or any of the State Teachers' Colleges, or other state educational institutions, the Board of Trustees of said University or the Board of Regents of any of said teachers' colleges or governing body of such other state educational institutions, are hereby authorized and empowered to erect, with necessary appurtenances or extensions thereto, buildings to be used in connection with such institutions under the provisions of this act, for the purpose of supplying such institution with the necessary buildings for educational purposes." The next one provides for "defraying the cost of acquiring such buildings *and appurtenances thereto* by construction," etc., and the educational institution was therein authorized to borrow the necessary funds from the Public Works Administration "or other

agency of the Federal Government" and issue bonds, as later provided in the act. Its section 5 prescribes what shall be done with the proceeds of the bonds after they were issued, and which was "the establishment or erection of such buildings and *necessary appurtenances thereto*"; and in section 6 of the act it is prescribed that "the buildings so acquired *and the appurtenances thereto,* shall remain subject to such statutory lien until the payment in full of the principal and interest of the bonds." Other references are made throughout the act to the nature and character of the acquisitions sought to be obtained as a "building" or "buildings," and to "furnishing classrooms, laboratory facilities, assembly halls or any such other educational facilities necessary in the operation of such educational institutions." Section 8.

The fundamental rule for the interpretation of statutes is to ascertain from the language employed the intention of the Legislature in enacting it, and to give to the terms employed their ordinarily accepted meaning, unless it is made to appear from the context that a different meaning was intended. That rule is so fundamental as to need no substantiation by appended decisions or other authority. From the inserted quotations from the act, including its title and the recitation of facts in the preamble, it is abundantly shown that the authority attempted to be conferred by the enabling act was not limited to the acquisition of physical structures denominated as "buildings." On the contrary, the statute employs the words "appurtenances" and "facilities" for the due and proper administration of the school. By the employment of such terms in the light of the recited purpose (it being to render the institution healthy, safe, and convenient for the students and other occupants thereof), it is made clear that it was the intention and purpose of the Legislature to empower and authorize the governing body of such institutions to erect, acquire, and equip the necessary school buildings with all of the modern conveniences that would contribute to the health, safety, convenience, and comfort of their occupants. In other words, it was the legislative purpose that the school buildings of the institutions referred to should be equipped ones and not mere structures of only walls, floors, ceilings, and roofs. It requires no argument to show that the conveniences here proposed to be acquired are absolutely necessary for the

accomplishment of the recited purposes supra, both in the inserted preamble and in the body of the act.

A case directly in point is that of Board of Education of City of Topeka v. State, 64 Kan. 6, 67 P. 559. See, also, Commonwealth v. Berea College, 149 Ky. 95, 147 S. W. 929, and Knox College v. Board of Review, 308 Ill. 160, 139 N. E. 56, 35 A. L. R. 1041. An almost limitless list of cases supporting the legal propositions we have stated could be attached were it necessary, but inasmuch as they are so fundamental and so universally recognized and adopted we deem it unnecessary. We, therefore, conclude that the court properly sustained the demurrer filed to plaintiff's petition and dismissed it on failure to amend.

Wherefore, for the reasons stated the judgment is affirmed.