## Hart v. Central City.

Feb. 10, 1942.

432

Newton Belcher for appellant.

T. E. Sparks for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming in part and reversing in part.

The appellant, Charles L. Hart, as the builder of certain streets in Central City in 1926, accepted in part payment improvement bonds secured by liens on property chargeable with the cost of construction and has continued to own them. In this suit against Central City, he seeks to recover certain sums representing the balance of the bonds he has not been able to collect by the enforcement of the liens. The case was decided upon the pleadings. The City confessed liability for $723.35 and judgment was rendered against it for that sum. The plaintiff appeals from the judgment denying him the entire prayer of his petition. We regret the City's confidence in its favorable judgment has led it not to file a brief although time for doing so was extended.

In 1929 the City without the knowledge of the bond-holders brought suit to enforce the street assessment lien on the property of Paul Wilcox. The amount of his delinquency is not disclosed, but it is alleged that the City purchased the property at the judicial sale for a sum much less than the lien. Shortly thereafter, on

October 1, 1930, the City sold the property for $1,600 and placed the amount in its general fund. Out of the street improvement fund it paid on the bonds the equivalent of the assessments against the Wilcox property up to and including the year 1932. Eventually the City offered to pay the balance of the installments amounting to $723.35, but Hart declined to accept it in full satisfaction, claiming the right to ten percent penalty and interest, which Section 3575 of the Statutes provides shall be collectible upon default in payment of any installment. In this suit he asserts he is entitled to have the entire $1,600 placed in the street improvement fund, which would make it available for payment of all the bonds. The court held, as we have indicated, that he was not entitled to that relief.

Formerly the statute made a city of the fourth class the agent of the bondholders not only to collect the assessments on the property as a tax and place the same in the street improvement fund, out of which the particular bonds were payable, but also to bring suit and enforce the liens, including the recovery of ten percent penalty. Under the statute the city was liable to the bondholders if it failed to perform its duty in that respect. City of Catlettsburg v. Citizens' National Bank, 234 Ky. 120, 27 S. W. (2d) 662; City of Catlettsburg v. Trapp, 261 Ky. 347, 87 S. W. (2d) 621. At the time these bonds were issued the statute had been amended so that it then provided, as it now does, that failure of the city to collect any assessment when due shall not create a liability against the city, and that the bondholder or person entitled to the tax shall have the right to proceed to enforce the collection by suit to foreclose the lien and "may have the proceeds of the property applied in settlement thereof." Section 3575, Kentucky Statutes. We have held that there is no liability of the city under the present law for not collecting the assessment. City of Irvine v. Wallace, 254 Ky. 564, 71 S. W. (2d) 974. It is obvious that the responsibility of the city for a failure to perform its former absolute duty rested upon its relation as the agent or trustee of the bondholder. It also seems clear that when a city does move to collect the same by suit—which it has the right, though ordinarily not the duty, to do under the present law—it does so in the same capacity. Peters v. Horn, 209 Ky. 688, 273 S. W. 519. So the proceeds must go into the street improvement fund for the benefit of the principal, that is, the bond-

holder. We are aware of no statute that requires or authorizes a city to bid in the property at its sale. But whether it has that authority or not is beside the question here. The City did so in this instance, and it must be held to the same accountability as any other agent or trustee who, under general law, is never permitted to use his position to profit directly or indirectly by the execution of his powers, actual or assumed, without the consent of his principal. Walker v. Carter, 208 Ky. 197, 270 S. W. 770; Blackburn's Adm'x v. Union Bank & Trust Co., 269 Ky. 699, 108 S. W. (2d) 806. Particularly, a city cannot increase its general fund by street improvement assessments or taxes collected for the benefit of bondholders. Peters v. Horn, supra. We are of opinion, therefore, that it was the duty of Central City to place the net proceeds from the sale of the Wilcox property into the street improvement fund in which there has remained a substantial deficit. The result of this conclusion will be to give the plaintiff all the money obtained from the enforcement of his lien on the property. It is not necessary, therefore, to say anything about whether he would otherwise have been entitled to the ten percent penalty.

It appears that the bondholder had proceeded against other property—according to the pleadings had been diligent in doing so—and yet there remained a deficit in the improvement fund of $1,966. It is claimed in this suit that the City must make up that deficiency out of its general fund. In the main the appellant's argument rests upon the fairness and wisdom of such a conclusion and upon the proposition that the amendment of Section 3575 of the Statutes, giving bondholders the right to enforce their liens in their own name, did not relieve the city of liability for failing to act. It is contended that the bondholder as the beneficiary of a trust could always have maintained the suit under Section 21 of the Civil Code of Practice.

The opinion that a city was liable for dereliction in duty in respect to the enforcement of the liens on the property rested in part upon the construction of the word "may" in the former statute, which provided that "the assessment may be collected like other taxes," as meaning "shall." Kentucky Statutes 1915, Section 3575. City of Covington v. Patterson, 191 Ky. 370, 230 S. W. 542. The current statute provides, "Should there be any

deficit, the council *may* provide for the payment of same out of the general fund.'' The appellant insists that ''may'' in this connection should also be construed as ''shall,'' relying upon the Patterson case and the general rule of interpretation stated in the dissenting opinion of Douglass v. Cline, 75 Ky. 608, 12 Bush 608, 649, in which it is said that where a statute directs the doing of a thing for the sake of justice to the public or third persons, the word ''may'' should be regarded as ''shall.'' The decision, however, was that ''may,'' used in Section 329 (now 299) of the Civil Code of Practice, in respect to the court appointing a receiver, vested a discretionary authority. The dissenting opinion, however, well states the general rule of interpretation of the word (Lewis' Sutherland on Statutory Construction, Section 640) except there should be added that ''the construction of mandatory words as directory and directory words as mandatory should not be lightly adopted.'' Crawford, Statutory Construction, Section 262. It is always a question of legislative intent. And in ascertaining that intent the entire statute must be considered. The whole scheme established by this statute is to require the improvements to be made at the expense of abutting property, with certain exceptions. The liability of the City for the cost where those excepted conditions exist is made manifest by the use of the word ''shall.'' It is provided that if the assessment against any particular lot exceeds one-half its value, the City Council ''shall provide for the payment of any such excess out of the general fund.'' It also provided that the city ''shall pay the cost'' of improving the street intersections, and shall pay for the streets abutting on its and other public property. Section 3563, Kentucky Statutes. The former statute provided that the city could establish a sinking fund to meet a possible deficit in the street improvement fund, and if any part should not be needed it went into the general fund. Section 3575, Kentucky Statutes, 1915 edition. The present statute provides that if the assessment shall prove to be more than sufficient to pay the bonds issued in anticipation of collection, the council shall make a ratable deduction in the last installments collectible from the property. Then follows the provision: ''Should there be any deficit, the council may provide for payment of same out of the general fund.'' Section 3577, Kentucky Statutes, expressly declares that the bonds ''shall be payable exclusively out of funds actually paid to and

collected by the city on account of the improvement taxes in anticipation of which the bonds are issued, and except as provided in this section, the city shall in no event be liable on any such bond except to the extent of funds actually paid to it as above set out.''

Inasmuch as the statute uses the word ''shall'' in relation to the city's liability in other particulars, and expressly provides that there shall be no liability for a failure to collect any assessment—the right being expressly given the bondholder to enforce the liens—we cannot say that ''may'' in the provision imports mandatory action. We think ''may'' was used in this relation in its ordinary sense of permission or of vesting discretion. The City in its discretion could make up the deficit in the fund which had been established for the satisfaction of the bonds, but it cannot be compelled to do so. The court correctly ruled there was no legal liability of the City to pay the deficiency.

The judgment is reversed to the extent that it refused to make the City liable for the proceeds of the Wilcox property and is affirmed in other respects.