Bernard A. GRIMM, City Comptroller, City
of Covington, Kentucky, Appellant,

v.

John J. MOLONEY, Mayor, et al., Appellees.

Court of Appeals of Kentucky.

June 22, 1962.

John J. O'Hara, Blakely, Moore &
O'Hara, Covington, for appellant.

Jo M. Ferguson, Grafton, Ferguson &
Fleischer, Louisville, Edwin H. Henry, City
Sol., Covington, for appellees.

STANLEY, Commissioner.

The suit tests the constitutional validity
of Chapter 178, Acts of 1962, entitled, "An
Act relating to powers of cities of all
Classes to induce governmental agencies
to locate or relocate within their bound-
aries; and declaring an emergency." De-

pendent are an implementing ordinance of Covington and a revenue bond issue.

The Act is very comprehensive. In broad outline, it authorizes any city to appropriate public funds to provide as an inducement to a "governmental agency," which expressly includes the United States to establish or locate within the city or its environs "a governmental project which might, but for such inducement, be established elsewhere, or not at all." Various methods of raising the money to be so appropriated are authorized. Among those methods is the issuance of revenue bonds.

Prior to and in anticipation of the statutory enactment, the City of Covington had devised a plan and made tentative or conditional proposals to the United States to have the government locate within the city a "Data Processing Center for the Internal Revenue Service" which would employ 1,500 to 1,800 persons and have an estimated annual payroll of $6,000,000. There was sharp competition among Covington and other cities to obtain the Center. Subsequent to the Enabling Act, the city passed an appropriate ordinance with terms satisfactory to the government for the location and establishment of the Center.

Under the authority of the statute and the ordinance a site of 17.75 acres has been acquired as a part and incident of the Federal and State Urban Renewal and Redevelopment Statutes. 42 U.S.C.A. § 1441 et seq.; Ch. 99 K.R.S.; Miller v. City of Louisville, Ky., 321 S.W.2d 237, 238. The land is to be leased to the federal government for a period of years with renewal options at an annual rental of $1.00. It appears that a contract or agreement has been entered into by the city and the General Service Administration of the federal government, conditioned or contingent upon the legal ability of the city to finance the purchase of the site. The government will cause buildings to be erected and those improvements will become the property of the city on the final expiration of the lease.

Additional material facts are that there are serious conditions of unemployment existing in the city and, as the ordinance declares, "same will continue or increase in severity within the foreseeable future." The objective of the statute and of the particular project is to serve the public purpose by creating jobs and relieving unemployment and to promote general welfare of the city by encouraging and increasing local industry. Cf. KRS 103.200–103.285; Faulconer v. City of Danville, 313 Ky. 468, 232 S.W.2d 80; City of Henderson v. Todd, Ky., 314 S.W.2d 948; Bennett v. City of Mayfield, Ky., 323 S.W.2d 573; and the Industrial Development Finance Act, KRS 154.001 et seq., which was held constitutional in Industrial Development Authority v. Eastern Ky. Reg. Pl. Comm., Ky., 332 S.W.2d 274.

To accomplish the purposes, the ordinance authorizes the issuance of $2,500,000 of revenue bonds. Two sources of revenue for the payment of the bonds are provided for. One source is to apply surplus revenues or service charges of the municipally owned combined and consolidated water and sewer systems. The other source is to set apart and allocate all revenues to be derived from occupational license taxes collected from employees of the Data Processing Center.

The City Controller, who is entrusted with the responsibility of dispensing the funds of the municipality under the enabling ordinance, having doubt as to the validity of the enactments and proposed action, joined with the mayor and other officials in submitting the facts to the court for adjudication of fifteen questions, as is authorized by KRS 418.020–418.030. The trial court declared there was a real controversy between the parties and that the proceeding had been instituted in good faith. In a learned review of the applicable law, the court answered the questions in the form of a Finding of Fact and Conclusions of Law, (CR 52.01) which, by reference, was incorporated in the judgment. It was adjudged that the act and the ordinance were con-

stitutional and effectual and the bonds were valid.

The appellant concedes that the decisions of this court sustain the reasoning and the conclusions of the trial court as to all questions except three. We do not, therefore, have any controversy with respect to those twelve questions and have no need to consider them.

The determination of two related major questions is challenged.

One question is whether the provisions of the statute and the ordinance "authorizing and providing for the issuance of revenue bonds for a project which is not in itself revenue producing, and the unrelated pledge of surplus revenues from the combined and consolidated water and sewer system of said city and certain occupational license taxes or fees, for the payment of said bonds, constitute the incurring of an indebtedness of the city without approval of the voters thereof in conflict with sections 157 and 158 of the Kentucky Constitution."

The other question is "Whether the provisions of the ordinance pledging surplus revenues of the combined water and sewer system of the City of Covington to the payment of the revenue bonds authorized by said ordinance constitute an impairment of the contract between the city and the holders of its presently outstanding and previously issued revenue bonds as represented by the bond ordinances pursuant to which the City of Covington has outstanding its revenue bonds payable from all or any portion of the revenues derived from the operation of said combined and consolidated system."

I.

Section 157 of the Constitution limits the tax rates of the several cities and districts and prohibits the incurring of a debt in excess of the income and revenue provided for the current year without the assent of the voters thereof. Section 158 places a limitation upon an indebtedness, measured by percentages of the value of

taxable property except in case of emergencies.

We are not concerned with the provisions of the Enabling Act of 1962, § 4, which authorize a city to incur an indebtedness and issue its general obligation bonds therefor in order to provide "all or any part of municipal inducements." Our concern is § 5 of the Act, which authorizes revenue bonds payable solely from a special fund set aside from "permissible sources." Such bonds are declared not to constitute an indebtedness of the city. Subsection (a) authorizes the pledge of direct revenues from the "governmental agency," but not exclusively, for the payment of the bonds. Subsection (b) provides that in the event the project does not produce any or sufficient direct revenue, then

"the city may pledge and covenant that it will cause to be deposited in said special fund, the revenues which it may derive from any municipally owned and operated water, electric, gas, sewer or other utility systems, or from any combination thereof, to the extent such revenues at the time may be or become surplus to the necessary costs of operating and maintaining such utility system or systems and surplus to any existing contractual commitments of the city to the holder or holders of outstanding revenue bonds payable from such revenues."

The ordinance and form of the proposed bonds are in accord with this subsection.

■■■ This feature of the legislation, both state and municipal, deals with propriatary functions of the city. Ordinarily, constitutional restrictions on municipal indebtedness are not applicable to obligations which are payable out of money derived from income and revenues of city owned and revenue producing public utilities. Klein v. City of Louisville, 224 Ky. 624, 6 S.W.2d 1104; City of Hazard v. Salyers, 311 Ky. 667, 224 S.W.2d 420; Burkholder v. City of Louisville, Ky., 276 S.W.2d 29;

Skidmore v. City of Elizabethtown, Ky., 291 S.W.2d 3; 64 C.J.S. Municipal Corporations § 1853b, p. 377, § 1957d, p. 609.

■ With respect to the use of surplus revenues from the described utilities for a purpose not related to those utilities, this case is on the same footing as McKinney v. City of Owensboro, 305 Ky. 254, 203 S.W. 2d 24; and Perkins v. City of Frankfort, Ky., 276 S.W.2d 449. It was held in those cases not to be illegal to use, where authorized, surplus revenues from public utilities to pay bonds issued for unrelated public projects.

## II.

The City of Covington has heretofore imposed an occupational license tax payable by all persons employed within the city, computed on the payrolls. The present ordinance provides that the revenue bonds to be issued under it shall be payable out of the surplus revenues of the city-owned water and sewer systems (as above described) "together with such revenues as may hereafter be received by the City by reason of the collection of occupational license fees or occupational license taxes paid by persons deriving salaries, wages, and profits from employment in or directly related to such Governmental Project (less a proportionate part of the cost of collecting the same), all as authorized and provided in the Enabling Act."

The Enabling Act, § 5(2) (b) (ii), provides:

"If the governing body of the city shall make a legislative finding of fact, as recited in the body of the ordinance authorizing issuance of the bonds, that the governmental project is of such nature as to provide increased revenues to the city by reason of increased employment and resulting increased receipts from occupational license fees or occupational license taxes, then the city may pledge and covenant that it will cause to be deposited in said separate and special fund the receipts which may be definitely identified as accruing from such occupational license fees or taxes by reason of employment in or directly related to the governmental project, less a proportionate part of the costs of collecting such fees or taxes."

An occupational tax of the character described is authorized by § 181 of the Constitution and KRS 92.280(2) and 92.281. The latter statute provides that cities may "use the revenue therefrom for such purposes as may be provided by the legislative body of the city." See City of Louisville v. Sebree, 308 Ky. 420, 214 S.W.2d 248. Other cases relating to the character and the legitimate use of occupational taxes are Commissioners of Sinking Fund v. Howard, Ky., 248 S.W.2d 340; Sims v. Board of Education, Ky., 290 S.W.2d 491; Kupper v. Fiscal Court of Jefferson County, Ky., 346 S.W.2d 766.

■ It is to be noted that the imposition of this kind of tax is optional. But the present pledge to earmark and pay an identifiable portion of the proceeds (if any) into the sinking fund for these bonds would be a contractual obligation by virtue of the ordinance. City of Newport v. McLane, 256 Ky. 803, 77 S.W.2d 27, 96 A.L.R. 655; City of Newport v. Rawlings, 289 Ky. 203, 158 S.W.2d 12; Hart v. Central City, 289 Ky. 431, 159 S.W.2d 18; 64 C.J.S. Municipal Corporations § 2119.

It may be said that the basis of the allocation of the portion of occupational tax revenue collected from employees of the Center is that it is "new money," for it would not be received but for the location of the enterprise and its expected payroll of $6,000,000. Doubtless, some of these employees would be subject to the occupational tax anyhow by reason of other jobs in the city. But it is suggested that other persons would take their places in case they transferred to the Center.

We have an authoritative precedent in Turnpike Authority of Kentucky v. Wall, Ky., 336 S.W.2d 551. The Turnpike Authority is authorized by the Legislature to

construct toll roads and issue revenue bonds to finance the same, which are payable by tolls and other particular revenues derived from the operation of the turnpikes, and, in addition, by all taxes collected on gasoline and other motor fuels consumed on the turnpikes (with an exception). We held that identifiable taxes were so directly related to the facility that they could logically be treated as revenue of the project and, accordingly, pledged to the payment of the bonds, subject, of course, to possible prior application to the satisfaction of previously issued general obligation road bonds. And since the public agency is not obligated to keep the tax in existence during the term of the contract, there is no "debt" within the meaning of Const. §§ 49 and 50.

In the present case the occupational taxes to be collected from the employees of the new project and paid into the sinking fund can be clearly identified and segregated. This will be more definite and certain than the allocation of the motor fuel taxes collected from users of toll turnpikes, which are to be calculated on a prescribed formula. KRS 175.520(5).

■ We are of opinion, therefore, that the allocation of the occupational taxes to the sinking fund of the revenue bonds is legal.

### III.

■ The third contested point in the case is whether the Act offends § 29 of the Constitution by delegating legislative power beyond the expressed or implied municipal powers because it does not set forth standards for determining the type of "inducements" for which the city may issue revenue bonds. Section 29, dealing with the distribution of powers of government, clearly and only means that the legislative power, as distinguished from judicial and executive power, is vested in the General Assembly. We concur in the trial court's opinion in regard thereto, namely:

"The question herein presented is not one of a delegation of power by the legislative branch of government to the executive branch, rather, it involves a conferring of local legislative powers upon what might be termed subordinate legislative bodies. Senate Bill No. 290 [Ch. 178, Acts] is enabling legislation for city governments, requiring further legislation by the authorized legislative bodies of the cities before the executives can take action. In order to provide all or any part of 'municipal inducement,' the legislative power of the cities must be exercised.

"The issue is raised by the question that Senate Bill No. 290 does not contain sufficient statutory standards for determining the type of 'muncipal inducements' for which a city may issue its general obligation or revenue bonds. Let it be said that the City, in the exercise of its legislative powers, in such respect, is governed not only by the provisions of Senate Bill No. 290, but, as well, by general laws for the organization of cities enacted pursuant to Section 156 of the Kentucky Constitution, and also governed and limited by each and every applicable Section of the Kentucky Constitution.

"The power to provide general laws for the organization of cities is conferred upon the Legislature by Section .156 of the Kentucky Constitution. The power is implied, if not expressed, for the General Assembly to confer and define local legislative power."

In support, the court cited Barrow v. Bradley, 190 Ky. 480, 227 S.W. 1016, which points out that under § 156 of the Constitution the Legislature has express authority by general laws to delegate to cities and towns all powers needful for local self-government.

Craig v. O'Rear, 199 Ky. 553, 251 S.W. 828, considers the breadth and scope of such delegated legislative powers. The powers conferred by the present act are within the scope.

We think the Act sufficiently defines "inducement" by § 1(b), relating to the appropriation of public funds, and by § 2, which describes within fair and reasonable specifications what the city may do to induce the choice of "governmental agencies" to locate within its boundaries or environs.

The judgment is affirmed.

BIRD, J., dissenting.