**E. P. SAWYER, County Attorney Jefferson County, Kentucky, Appellant,**

v.

**JEFFERSON COUNTY FISCAL COURT, etc., et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 21, 1969.

As Modified March 21, 1969.

Michael R. McMahon, Asst. County Atty., Louisville, for appellant.

Franklin P. Hays and Luther C. Conner, Jr., Skaggs & Hays, Louisville, for appellees.

CULLEN, Commissioner.

The appeal is from a judgment declaring valid in all respects the provisions of KRS 66.510 to 66.543 (Chapter 232 of the Acts of 1966), relating to financing of public improvements in counties having a population of 300,000 or more (Jefferson County being the only one), and declaring valid a resolution of the Jefferson County Fiscal Court adopted thereunder. The action was brought by the county attorney of Jefferson County against the fiscal court and the county public improvements finance board, alleging that the statute and the resolution violated numerous provisions of the Kentucky Constitution, primarily Section 157 relating to debt limitations on cities, counties and other municipalities.[1] The defendants answered, asserting that the statute and resolution were in all respects valid and asking a declaration to that effect and a declaration as to the meaning of certain provisions of the statute. The circuit court entered judgment as prayed by the defendants. The county attorney has appealed.

The statute in question was enacted in 1966 under the title, "An Act relating to finance and indebtedness for public improvements * * * in certain counties." The kinds of improvements to which the statute relates are jails, parks, office space for constitutional county officers, roads,

sanitation, land reclamation, conservation and drainage. KRS 66.520. The statute authorizes the fiscal court to create a "County Public Improvements Finance Board," which shall prepare a public improvements financing plan and, after approval thereof by the fiscal court, carry it out. KRS 66.510, 66.523. The board is authorized to incur indebtedness and to pledge its receipts from any or all sources to secure payment thereof. KRS 66.527. The only receipts of any consequence specifically provided for in the statute are annual appropriations by the fiscal court to the board. KRS 66.520. Since the provisions for such appropriations are the focus of the arguments in this case as relates to Section 157 of the Kentucky Constitution, we quote them:

"* * * The fiscal court of such a county shall make an annual appropriation for those facilities and improvements. If a board has been established, the annual appropriation shall be to the board and shall be the lesser of (a) the amount requested by the board under its plan or (b) twelve percent of the amount the county would have received in the preceding year from imposition at the full rate allowed by KRS 68.180 of the fee authorized by that section for non-school purposes reduced by the amount of all credits described in KRS 68.190 actually allowed against such fees. * * *" KRS 66.520(1). (The "fee" referred to as authorized by KRS 68.180 is the county occupational license *tax*.)

The pleadings in this action show that Jefferson County did create a "County Public Improvements Finance Board" and the fiscal court adopted a resolution for the making of an annual appropriation as required by KRS 66.520(1). The resolution quoted the same language from the statute as hereinbefore quoted by us in

---

1. "* * * No county, city, town, taxing district, or other municipality, shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof * * *" Const. 157.

this opinion. The pleadings allege that the board plans to issue bonds and "to pledge for the payment of same its receipts from its annual appropriation."

In the pleadings, in the judgment, and in the briefs in this court (but not specifically so in the fiscal court resolution) the above quoted provisions of KRS 66.520 as to the required annual appropriation have been construed as meaning that the appropriation will be *of* (and limited to) the proceeds of the occupational license tax. The county attorney has pleaded and argued that the statute and resolution call for the pledge of a portion of the revenue from the occupational license tax and that therefore a debt in violation of Section 157 of the Kentucky Constitution has been created. The fiscal court and the board have pleaded and argued that the pledge of the revenue from the occupational license tax does not create a debt because the fiscal court is not obligated to continue *imposing* such a tax. The trial court accepted the latter argument and so adjudged. Practically all of the argument in the briefs in this court as relates to Section 157 has been addressed to the question of whether the fact that the county is not obligated to continue imposing an occupational license tax takes the pledge of the proceeds out of the character of a debt within the meaning of Section 157.

■ As we read the language in question it does *not* call for the appropriation of proceeds of the occupational license tax— it merely uses the amount of occupational license tax that would have been received in "the preceding year" from imposition of the tax at full rate as a *measure* of the maximum limit of the appropriation. Obviously clause (a) does not even relate the appropriation to any specific tax, and the language of clause (b) nowhere says that the appropriation shall be of or be limited to the proceeds derived from the occupational license tax. Really what is said (and

we think was intended) by clauses (a) and (b), taken together, is that the county shall appropriate, from its *general revenues,* the amount requested by the board, not to exceed a dollar amount computed as provided in clause (b). So what the county is required to do under the statute, and what Jefferson County has done under its resolution, is to commit its *general revenues* to the payment of an annual appropriation for a future period the duration of which can be controlled by the terms of financing contracts entered into by the board with money lenders.

■ Of course the commitment by the county to make the appropriations to the public improvements finance board does not, in and of itself, create a debt—the debt does not arise until a *contractual* obligation has been incurred to the payment of which the committed appropriations are pledged. So there is no violation of Section 157 of the Kentucky Constitution in the mere statutory direction to the county to make the appropriations for public improvements, nor in the resolution of the fiscal court so doing.[2] But when it comes to *contracting* to pledge the appropriated money of future years to secure payment of borrowed money Section 157 does come into the picture.

■ When the board borrows money (i. e., issues bonds) and pledges in payment thereof the annual appropriations for future years which the county is committed to make *out of its general revenues, somebody* has become "indebted" as that term is used in Section 157. See Payne v. City of Covington, 276 Ky. 380, 123 S.W.2d 1045, 122 A.L.R. 321; Ramsey v. City of Shelbyville, 119 Ky. 180, 83 S.W. 116, 68 L.R.A. 300; Kenton County Fiscal Court v. Richards, 291 Ky. 132, 163 S.W.2d 302. If the obligation is to be deemed that of the *county* Section 157 plainly is violated. It is difficult to see how the mere fact that the obligation is made in the name of an agency

2. Whether there is a violation of Section 181 of the Kentucky Constitution we do not decide.

created exclusively by and for the county can keep it from being considered an obligation of the county itself. It is the county's general revenues that are being pledged to pay the obligation and it would not seem to make any difference that the obligation is negotiated by the improvement board instead of by the fiscal court.

■ If, however, it be considered that the obligation is not of the county but is of the improvement board as an independent "body corporate and politic" as it is designated by KRS 66.510, Section 157 still is violated, because as so considered the board *is itself* a "municipality" within the meaning of Section 157. By pledging all of *its resources* for a period of future years to the payment of its "debts and obligations" as contemplated by KRS 66.527 the board will have run afoul of Section 157's prohibition, where the resources consist of proceeds of general tax revenues which a tax-levying unit of government is required to pay over to the board in future years. The fact that the board itself has no power to *levy taxes* does not keep it from being classed as a municipality within the meaning of Section 157 so long as it can compel the tax-levying unit of government to pay over proceeds of taxes levied by the latter. See Brown v. Board of Education, 108 Ky. 783, 57 S.W. 612. As stated in that case (57 S.W. @ 613):

"* * * There would seem to be no reason why the constitutional provision should not be applied to a case like the one under consideration, where, for convenience, and for motives of public policy not necessary now to be considered, the power to contract the indebtedness is lodged in one agency in the administration of the civil government and the power to provide the means for meeting such obligation is lodged in another. * * *"

There is nothing extraordinary in the concept that a board of the kind here involved is a municipality, because in addition to the holding in *Brown* that a city school board is a municipality there have been similar holdings as to a sewer board, Rash v. Louisville & Jefferson County Metropolitan Sewer District, 309 Ky. 442, 217 S.W.2d 232, and an airport board, Louisville & Jefferson County Air Board v. American Airlines, D.C., 160 F.Supp. 771.

■ It is our conclusion that the statute in question violates Section 157 of the Kentucky Constitution to the extent that it authorizes the improvement board to pledge to the payment of its debts appropriations required to be made to it by the fiscal court in future years from the proceeds of general tax revenues.

Nothing in this opinion is intended to cast any doubt on the decisions in the so-called "holding corporation" cases, running from Waller v. Board of Education of Georgetown (1925), 209 Ky. 726, 273 S.W. 498, to Baker v. City of Lexington (1954), 273 S.W.2d 34, upholding borrowing on the credit of rental payments under contracts in which the governmental subdivision is never at any one time committed beyond the revenues provided for the current fiscal year. The same is true as to the cases upholding borrowing by statutory institutions and authorities under contracts which do not undertake to pledge future appropriations or tax levies beyond the current fiscal year. Clay v. Board of Regents of Morehead State Teachers College (1934), 255 Ky. 846, 75 S.W.2d 550; McDonald v. University of Kentucky (1928), 225 Ky. 205, 7 S.W. 2d 1046; Turnpike Authority of Kentucky v. Wall, Ky., 336 S.W.2d 551. Likewise not affected are the cases involving a pledge of service charges or of revenues generated by a particular project, such as City of Bowling Green v. Kirby, 220 Ky. 839, 295 S.W. 1004; Dunn v. City of Murray, 306 Ky. 426, 208 S.W.2d 309; Miller v. City of Owensboro, Ky., 343 S.W.2d 398; McKinney v. City of Owensboro, 305 Ky. 254, 203 S.W.2d 24; Turnpike Authority of Kentucky v. Wall, Ky., 336 S.W.2d 551; Grimm v. Moloney, Ky., 358 S.W.2d 496.

This holding disposes of the only issue raised by the parties as to which there fairly could be considered to be a justiciable controversy in this suit. Accordingly we do not pass on any other issue, and we think it was not proper for the circuit court to have done so. Upon remand the judgment to be entered will be confined to the one holding herein made.

The judgment is reversed with directions to enter judgment in conformity with this opinion.

All concur.